## MARVIN MANION v. ROBERT TWEEDY.

100 N. W. (2d) 124.

December 18, 1959—No. 37,273.

---

[8]Sobczyk v. City of Duluth, 245 Minn. 569, 73 N. W. (2d) 795; Graf v. Montgomery Ward & Co. Inc. 234 Minn. 485, 49 N. W. (2d) 797.

*Cummins, Cummins, Hammond & Ames* and *William P. O'Brien,* for appellant.

*Richards, Janes, Montgomery & Cobb* and *Greer E. Lockhart,* for respondent.

KNUTSON, JUSTICE.

This is an appeal from an order denying plaintiff's motion for a new trial following a verdict of a jury in favor of defendant.

On August 15, 1953, plaintiff was injured when the butt end of a large tree he was felling struck him on the knee. The tibia and fibula of his left leg were fractured. There was a spiral fracture with fragments, a 1½- to 2-inch-long fracture of the tibia just above the ankle joint, and a fracture of the fibula running down into the joint. He was taken by automobile to a doctor's office in Rushford, Minnesota, where the leg was placed in a temporary basket crib splint. He was then taken to the hospital in Winona and was attended by Dr. J. N. Steiner. Dr. Steiner requested defendant, Dr. Robert Tweedy, to assist in reduction of the fracture since Dr. Tweedy had had more experience in matters of this kind than Dr. Steiner. Dr. Tweedy has engaged in a general medical practice as physician and surgeon in Winona since 1935 and has had considerable experience in reducing fractures of all kinds by the various methods known to the medical profession.

Dr. Tweedy testified that in the process of reducing the fracture they secured a nearly perfect anatomical alignment of the fractured

bones by gentle hand traction and manipulation but that upon doing so the blood circulation was impaired to such an extent that the toes became dusky and discolored and the doctors were unable to feel the pulse at the dorsal pedis artery in the foot. The fractures had to be moved out of their perfect position in order to relieve the constriction, otherwise there was danger that the patient might lose his foot as the result of gangrene. The cast accordingly was placed on the leg with the foot in a slightly "cocked" position in the hope that later they would be able to get the bones back into a good position. The possibility of reducing the fractures by skeletal traction, by open reduction, or by the use of a basket crib splint was considered by the doctors, but the first two were ruled out because of the circulation problem which existed and the latter because of the necessity of holding the foot in a rigid position.

Two days later, on August 17, X-rays were taken which showed that the foot had been cast with some angulation. A part of the cast then was cut off to see if the circulation had improved sufficiently so that a more perfect alignment could be obtained, but it was found that movement of the foot one way or the other caused the toes to become dusky. The cast therefore was replaced as it was originally. Dr. Steiner discharged plaintiff from the hospital on August 18.

Plaintiff returned to the hospital on September 2. The cast then was removed and a further attempt was made to realign the fragments, but the doctors encountered the same circulatory trouble as before. The leg was recast with the foot in a cocked position. On September 11, additional X-rays were taken which showed that there was a lateral angulation of about half an inch at the point of the fracture, but the forward and backward alignment was good. No further manipulation was attempted since the fracture then had begun to heal. Dr. Tweedy continued to see plaintiff until January 25, 1954. Plaintiff was never discharged but failed to return after that date. There is no dispute that plaintiff's foot healed in the position in which it was placed with some angulation.

Plaintiff commenced this action against Dr. Tweedy to recover damages for alleged malpractice. Further facts will be discussed in

dealing with the questions raised on this appeal. The jury returned a verdict in favor of defendant. Plaintiff's assignments of error relate mainly to instructions of the court.

■   Plaintiff first contends that the court erred in refusing to instruct the jury as follows:

"Where a physician is employed generally to treat and heal an injury he owes the duty in giving continued care and treatment and that duty continues until the relationship terminates. The treatment does not include merely the immediate and isolated resetting or reduction or adjustment of a fracture but all subsequent care and treatment essential to recovery. *Negligent failure to treat a condition of injury at a time when the need of treatment is known to the attending physician and there is opportunity to apply proper treatment amounts to the same as negligent treatment.*

"A physician is responsible for the direct consequences of his negligent acts of omissions whenever he is placed in such a position with regard to another that it is obvious that if he does not use good care in his own conduct he will cause injury to that person." (Italics supplied.)

It is plaintiff's claim that under Hagen v. Snow, 244 Minn. 101, 69 N. W. (2d) 100, he was entitled to a specific instruction on his theory of the case as against a general or abstract instruction. The rule of the Hagen case is subject to several qualifications. In the first place, there must be evidence to support the theory advanced by a litigant before he is entitled to have an instruction, either specific or general, on the proposition involved in the theory.[1] Then, again, the theory advanced by a litigant must be consistent with the applicable rules of law governing the rights and duties of the parties.

The italicized portion of the requested instruction quoted above is taken almost verbatim from Schmit v. Esser, 183 Minn. 354, 236 N. W. 622, 74 A. L. R. 1312. The only question involved in that case was whether the 2-year statute of limitations had run. The italicized portion of the requested instruction, lifted out of context in the opinion, related only to the time when the negligence occurred which would start the

---

[1]Boutang v. Twin City Motor Bus Co. 248 Minn. 240, 80 N. W. (2d) 30.

statute of limitations running. It had nothing to do with the rules governing the duty of a physician to a patient as such, and, even though it might be correct as an abstract proposition if applied to the proper facts, standing alone it does not define the duties of a doctor to his patient.

■ The rules applicable generally to a review of instructions to a jury are summarized in Cameron v. Evans, 241 Minn. 200, 208, 62 N. W. (2d) 793, 798, where we said:

"* * * the charge of the trial court must be viewed in its entirety and from a practical and common-sense point of view. The trial court is allowed considerable latitude in the language used, and a new trial will not be granted where requested instructions are refused when the general charge fairly and correctly states the applicable law. All that is required is that the charge as a whole convey to the jury a clear and correct understanding of the law. It is unnecessary that every possible opportunity for misapprehension be guarded against. If the charge fairly lays down the law of the case, it is sufficient. Usually it is preferable to give a general charge, if practicable, upon the whole law of the case rather than to run the risk of overemphasizing one side of the case or confusing the jury as is often done by giving requested instructions or particularizing upon specific items."

Obviously, it is preferable to give a jury a complete integrated instruction, embodying all the applicable law in an orderly sequence, rather than to piecemeal use such language as may be requested to give the law pertaining to one phase of the case. The danger of overemphasis of one feature is greatly increased where requested instructions are given separately from the whole charge. As long as the charge embodies all applicable law in language capable of understanding by the jury, it should be sufficient.

■ With these rules in mind, we may examine the claimed errors of the trial court. Reduced to their essence, plaintiff's claims are that, based on the testimony of an orthopedic surgeon who was called as an expert by plaintiff, defendant should be liable for negligence for failure to consult with a specialist when he ran into a circulatory trouble or that he should have taken steps to correct the deformity after

having set the foot in a cocked position. With respect to the first claim, plaintiff apparently relies upon the general rule stated in Annotation, 132 A. L. R. 392, as follows:

"It may be stated as a general rule that, as a part of the requirements which the law exacts of general practitioners of medicine and surgery, or other schools of healing, if, in the exercise of the care and skill demanded by those requirements, *such a practitioner discovers, or should know or discover, that the patient's ailment is beyond his knowledge or technical skill, or ability or capacity to treat with a likelihood of reasonable success,* he is under a duty to disclose the situation to his patient, or advise him of the necessity of other or different treatment." (Italics supplied.)

Admitting that the above general rule is applicable in a proper case in determining the liability of a doctor for malpractice, it is not applicable here. There is no showing that Dr. Tweedy knew or should have known that the patient's condition was beyond his knowledge or technical skill or ability to treat with the likelihood of reasonable success. Dr. Tweedy was a duly licensed practicing physician who had completed his under-graduate work and medical education at recognized schools. Immediately following his internship, he came to Winona in 1935 and went into the general practice of medicine with his father, who had practiced medicine in Winona since 1895. At the time he undertook the treatment of plaintiff he had had considerable experience in reducing fractures of all kinds by the various methods known to the medical profession. That his experience was extensive is hardly open to question. Not every treatment of a patient that turns out to be less than a complete success gives birth to a malpractice suit merely because the attending physician has failed to consult a specialist. Before the above rule becomes applicable, it must appear that the attending physician or surgeon knew or should have known that the condition which confronted him was beyond his knowledge, ability, or capacity to treat. A physician is not an insurer of a cure or a good result of his treatment or operation. He is required to possess only the skill and learning possessed by the members of his profession in good standing in his locality and to exercise that skill and learning with

due care. To adopt the rule now urged by plaintiff would impose upon every general practitioner the duty of consulting with a specialist on every conceivable complication which might arise in the practice of his profession. Only at his peril could he rely on his own experience and knowledge in proceeding according to his own judgment as to what the ailment might require by way of treatment. Such has not been the law, nor are we now prepared to adopt it. There is no showing in this case that a doctor of defendant's training and experience would be incapable of understanding or handling the circulatory difficulty which was encountered.

■ With respect to the duties of a doctor generally, the court instructed the jury as follows:

"* * * You are instructed as a matter of law that the relationship of physician and patient is established in this case between the plaintiff Marvin Manion and the defendant Dr. Robert Tweedy. The term malpractice means bad practice, or, more definitely, it means the failure of a physician and surgeon to exercise the care and professional skill usually exercised by the ordinary member of his profession in good standing in the same or similar locality. Either the want of such care or the absence of such skill may be sufficient to constitute malpractice.

"The duty to exercise this degree of skill and care continues until the relation of doctor and patient is ended, either by the discharge of the doctor by the patient, or the proper discharge of the patient by the doctor from further treatment by him.

"It is the duty of a physician to act with the utmost good faith towards his patient, and to advise him fully as to his condition, and as to the proper care and treatment of his injuries. A surgeon is not required to insure the improvement or repair of the condition which he undertakes to treat. And, he is not to be charged with malpractice simply because he is unable to remove all the effects of an accident and restore the patient to his former condition.

"The law requires only that a physician or surgeon exercise the care and professional skill usually exercised by the ordinary members of his profession in good standing in the same or similar locality.

"A physician entitled to practice his profession, possessing the requi-

site qualifications and applying his skill and judgment with due care is not ordinarily liable for damages consequent upon an honest mistake, or an error of judgment in making a diagnosis or in prescribing treatment where there is reasonable doubt as to the nature of the physical conditions involved or as to what should be done in accordance with recognized authority and good current practice.

"Where under the usual practice of the profession different courses of treatment or procedure may properly and reasonably be applied, the practitioner has a right to use his best judgment as to the manner and means of treatment and procedure, and he will not be liable in an action for malpractice so long as his conduct is not inconsistent with ordinary skill and care under the circumstances, though there were other procedures or types of treatment available."

We think that these instructions embody the applicable rules pertaining to the liability of a physician for malpractice.

■ Plaintiff next contends that the court erred in refusing to give the following requested instruction:

"There has been some evidence in this case that Marvin Manion was attended for his fractures by a Dr. Steiner. You are instructed as a matter of law that under the evidence in this case, Drs. Steiner and Tweedy during the period of August 15, 1953, to September 2, 1953, were jointly engaged in the treatment of Marvin Manion.

"If the concurrent negligence of two or more persons combined results in an injury to a third person, each of such persons is liable and the injured person may recover from either or both; the concurring negligence of one is no excuse or defense to the other."

There is no claim in the pleadings, or elsewhere, that liability of Dr. Tweedy was in any way predicated upon the negligence of Dr. Steiner. The complaint alleges only that Dr. Tweedy was negligent. The evidence is directed toward establishment of that claim. In the absence of any allegation in the pleading or trial of the issue by consent, there was no error in refusing to give these instructions.

■ Plaintiff then claims that the court erred in permitting Dr. Tweedy to testify in narrative form as to what his treatment was.

The mode, manner, and method of receiving testimony is a matter

resting almost wholly in the discretion of the trial court and does not furnish grounds for a new trial unless some prejudice can be shown.[2] We find no abuse of discretion in this record.

■ Plaintiff's next contention is that the trial court erred in excluding an opinion of plaintiff's expert as to whether failure to secure assistance was according to the standard of skill required by the ordinary practicing physician. In order to understand this assignment of error it is necessary to set forth what transpired at the trial. The following appears from the record:

"By Mr. O'Brien:

"Q. What is your opinion, Doctor?

"A. It was my belief that this cast was removed and there was attempt to improve the situation. But on finding the circulation partly cut off again, it was impossible to keep the foot in the proper position, therefore I feel that was the usual, average practice for this type of situation at this time.

"Q. And, Doctor, assume further that at that time there was—after that occurred—that there was no attempt to secure any assistance from or consultation with anybody else with reference to the problem of this circulation being cut off; that consultation was available, or rather it is agreed and admitted that the doctor could have consulted about this matter with a specialist in the field; having that in mind, Doctor, do you have an opinion whether or not the procedure of the doctor and his failure to do that was proper treatment and care for Mr. Manion under the circumstances in this case, taking into consideration the standard of skill required by the ordinary practicing physician and surgeon in this general vicinity?"

Objection to this question was sustained by the court. Plaintiff's counsel then made the following offer of proof:

"I want the record to show that I wish to make an offer of proof that it is the common practice of the ordinary and skillful physician in this general locality to seek consultation and assistance when he meets a problem *for which he does not know the reason or can correct,*

---

[2]Kugling v. Williamson, 231 Minn. 135, 42 N. W. (2d) 534.

and I offer this in connection further with further proof that it can be shown that this leg of Mr. Manion's could have been set without the mal-alinement under the conditions claimed by Dr. Tweedy, and that had consultation been made to a reasonable medical certainty, Mr. Manion wouldn't have this difficulty in his leg. And, further, that there was no need for the extended period of him having this disability or cast, without taking operative procedures to straighten the leg." (Italics supplied.)

The offer of proof was refused by the court.

As we have stated above, failure to seek assistance or consultation can furnish a basis for a finding of negligence only when it is made to appear that the attending physician knew or should have known that he was incompetent to handle the situation which confronted him. There is no such showing here. As a matter of fact, plaintiff's expert testified to the contrary. The offer was properly refused.

■ After the jury had retired, the jurors came back on two occasions and asked for clarification of the court's instruction as to the law. The court thereupon reread practically the entire instruction concerning the duty of a physician to a patient. Included in such restatement is the following:

"* * * a physician entitled to practice his profession, possessing the requisite qualifications and applying his skill and judgment of due care, is not ordinarily liable for damages consequent upon an honest mistake or an error of judgment in making a diagnosis or in prescribing treatment, where there is reasonable doubt as to the nature of the physical conditions involved or as to what should be done in accordance with recognized authority and good current practice."

At the request of individual members of the jury, virtually the whole of the court's instruction pertaining to duties of a physician to his patient was read twice the first time the jury returned. When they returned the second time, the court again, at their request, reread these instructions to them. Plaintiff now contends that the court overemphasized the quoted portion above. We have carefully examined the record, and, while it is apparent that the jury had difficulty in comprehending the law as given to it by the court, it is clear that no part of

the applicable law was emphasized more than other parts. The portions of the charge pertaining to duties and obligations of a physician were read as often as the portions complained of. We do not believe that the jury was misled by any overemphasis of the quoted portions. Nor was the quoted portion an incorrect statement of the law. It is taken from many of our decisions in the past.

In Berkholz v. Benepe, 153 Minn. 335, 337, 190 N. W. 800, we said:

"A surgeon is not to be held negligent simply because results are bad. A plaintiff in a malpractice case must show that the poor result was due to negligent or unskilful treatment. The law only requires a physician and surgeon to exercise the care and professional skill usually exercised by the ordinary member of his profession in good standing. He is only to be judged as to treatment by the standard of the medical school to which he belongs. Ordinarily the question whether the treatment was negligent cannot be determined by a jury of laymen without the aid of the opinion of medical experts. *He is not responsible for the consequences of an honest mistake or error of judgment in his diagnosis or treatment where there is doubt as to what should be done in accordance with recognized authority and current good practice.*" (Italics supplied.)

That test of liability has been followed consistently throughout our decisions.[3]

In restating the applicable law, one of the jurors asked:

"The Juror: Did that read 'He is not ordinarily' or 'he is not—[']

"The Court: It says ordinarily—it would be quite an exceptional case, I would imagine. Perhaps that word ordinarily is an unfortunate word in there, because the thought is a man uses his best judgment and is careful, and then makes an honest mistake or error in judgment, he is not liable for the consequences if he uses the care and skill that is ordinarily exercised by the ordinary member of his profession in good standing in the locality. It would have to be something quite extraordinary about the thing to do that. And that is only common sense, because nobody would be a doctor if they had to take a risk like that,

---

[3]14 Dunnell, Dig. (3 ed.) § 7488.

as well as other doctors would not, and still something went wrong. He wouldn't dare to be a doctor. So that rule has to be applied in a common sense way and a practical way. And this is an amplification of the same rule."

Plaintiff contends that use of the words "quite extraordinary" was so prejudicial that it furnishes grounds for a new trial.

Before the jury retired the court inquired of counsel whether they wished to be present if the jury requested additional instructions. Both counsel stated that they wished to be called up to a certain hour but that thereafter they would waive any inadvertence in statements which might be made in further instructions to the jury. While the above language may have been unfortunate, we are of the opinion that when it is read together with the entire instruction given by the court the jury could hardly have been misled by it. In dealing with the test to be applied, the court, in attempting to differentiate between what ordinarily is done and what would be beyond the ordinary, probably unfortunately used the word "extraordinary." If he had used the term "something out of the ordinary," we assume that there would be no complaint about it. While "extraordinary," standing alone, may have a connotation which goes beyond something out of the ordinary, we think that when read with the balance of the court's instruction it carried the proper meaning. In any event, it was an inadvertence that was waived by counsel for both parties.

Other contentions of plaintiff merit no discussion. We find no reversible error.

Affirmed.