William A. KING et ux., Petitioners,

v.

Kenneth R. FLAMM, Respondent.

No. B-1288.

Supreme Court of Texas.

June 11, 1969.

Rehearing Denied July 9, 1969.

Lockhart, Lindsey & Neal, Connally Lockhart, Amarillo, for petitioners.

Stone, Stone & Chambers, Ben H. Stone, Jr., and John C. Chambers, Amarillo, for respondent.

WALKER, Justice.

█ This is a medical malpractice case. The suit was brought by William A. King and wife, Mary Louise King, plaintiffs, against Dr. Kenneth R. Flamm, defendant, to recover damages alleged to have been sustained as a result of incorrect diagnosis and improper treatment of Mrs. King. One ground of negligence alleged in the petition is defendant's failure to call in a specialist to aid in the diagnosis and treatment. The trial court rendered summary judgment for defendant, and the Court of Civil Appeals affirmed. 434 S.W.2d 197. In our opinion the summary judgment proofs do not show conclusively that defendant exercised proper care in failing to call in a specialist before he did or that plaintiffs suffered no damage as a proximate result of such failure.

Our statement of the events leading up to the suit is taken largely from the opinion of the Court of Civil Appeals. Plaintiffs and defendant reside in Amarillo. Defendant is a general practitioner, and he had treated Mrs. King for various complaints over a period of several years. Following a laminectomy performed by Drs. Sadler and Ellis, neither of whom is involved in this suit, Mrs. King was discharged from the hospital on October 12, 1966. About three weeks later she awoke with a pain in the left side of her chest, which continued throughout the day. She called defendant at his home, and he advised her to take a Darvon capsule. When the pain continued the following day, she saw defendant's associate, Dr. Rowley. Defendant was out of town at the time. She was X-rayed, and Dr. Rowley diagnosed her condition as pleurisy, administered terramycin, and gave her a presciption for the drug in capsule form.

On each of the next three days she continued to experience pain and returned to Dr. Rowley for additional injections of terramycin. On November 11, she coughed up "a tremendous clot of blood." The blood was a deep red color. She called defendant and advised him of the hemoptysis. He told her the blood was not coming from her lungs and that she had nothing to worry about. During the next several days her pain continued and she coughed up blood occasionally.

On November 17, she had fever for the first time. She again called defendant, who prescribed another antibiotic. On November 20, she awoke in extreme pain and with a relatively high temperature. She telephoned Dr. Tom W. Duke, a specialist in internal medicine, and requested him to see her. Upon learning that she was attended by defendant, Dr. Duke advised that it would be necessary for her to call defendant. She did so, and defendant had her admitted to the hospital and X-rayed. At that time she told defendant that she was concerned about her condition and requested him to call in Dr. Duke to determine whether anything had been overlooked. Defendant advised her that he had viewed the X-rays taken upon her admission to the hospital, that she had lobar pneumonia, and that he did not think it was necessary to call in a consultant for this condition.

The continued use of antibiotics brought Mrs. King's temperature to normal, and she was discharged from the hospital on December 5. She coughed up dark clots of blood three times during this period of hospitalization. Defendant's diagnosis as dictated on December 5 was: "Admitting diagnosis: Bronchopneumonia, right chest. Final: Pneumonia, right middle lobe. Pleurisy with effusion at both bases."

She did very well for a few days at home, but on December 18 "suddenly had the terrible pains and the coughing of blood again." She called defendant, who sent her more terramycin. Her temperature gradually diminished, and she was feeling "pretty good" by Christmas. She continued to cough up blood, however, one or more times each day. She was X-rayed again on December 30 or 31. Defendant then advised that her lungs had cleared up considerably but not completely, and that

she could return to her secretarial work after the holidays. She went back to work on January 2, 1967, and the following day began coughing up blood two or three times every hour. The blood was always dark red.

Mrs. King was again admitted to the hospital on January 5. Defendant's initial diagnosis at that time was "chest pain, cough with bloody sputum, cause undetermined." Mrs. King again requested defendant to call in a specialist, and he agreed to do so. The following day she was seen by Dr. Duke, who promptly diagnosed her condition as pulmonary embolism resulting from thrombophlebitis in the lower extremeties and the pelvic area. Mrs. King was then placed on conservative treatment for pulmonary embolism, the treatment consisting primarily of anticoagulation therapy, and was discharged from the hospital on January 30. Her symptoms reoccurred, and she consulted Dr. John J. Walker, an internist at Arlington, Texas. On his recommendation and that of Dr. Duke and Dr. Patrick Oles, an Amarillo surgeon, the latter performed an inferior vena cava plication and a bilateral ovarium vein ligation. These are surgical procedures calculated to obstruct or prevent the passage of blood clots formed in the lower part of the body.

The summary judgment proofs consist of the depositions of plaintiffs, defendant and Dr. Oles, and the affidavits of defendant, Mrs. King, Dr. Oles, Dr. Duke and Dr. Walker. All the clots expectorated by Mrs. King were dark red in color. Dr. Duke and defendant agree that hemoptysis resulting from pulmonary embolism is characterized by bright red blood. Both Dr. Duke and Dr. Oles expressed the opinion that defendant's diagnosis and treatment were reasonable and not improper for a general practitioner. Since the Court of Civil Appeals found no expert testimony to the contrary, it concluded that summary judgment was properly rendered in defendant's favor. Plaintiffs contend that the proofs will support a finding that defend-

ant failed to exercise proper care in making his diagnosis. We do not consider this problem, because it is our opinion that the summary judgment must be reversed for the reason stated above.

■■■ One who holds himself out as a specialist is generally expected to possess a higher degree of skill and learning than a general practitioner. See 41 Am.Jur. Physicians and Surgeons § 90; Annotation, 59 A.L.R. 1071. The general practitioner is not required to consult with a specialist, however, on every conceivable complication that may arise in his practice. See Manion v. Tweedy, 257 Minn. 59, 100 N.W.2d 124. If he exercises the care and skill of other physicians similarly situated, he is not responsible for an error of judgment even though a specialist would not have made the same mistake. But there is a duty to seek consultation with, or refer the patient to, a specialist when he knows, or in the exercise of reasonable care should know, that the services of a specialist are indicated. Here, as in other cases of alleged medical malpractice, the defendant is to be judged on the basis of the standards and practices of his profession. If there is expert testimony fairly supporting the conclusion that a reasonably careful and prudent general practitioner would have sought consultation under the same or similar circumstances, the trier of fact is entitled to find that the defendant was negligent in failing to do so. See Simone v. Sabo, 37 Cal.2d 253, 231 P.2d 19; Annotation, 132 A.L.R. 392.

Dr. Oles stated in his affidavit that there is a difference between the ethical duty of a physician to follow the desires of his patient in seeking consultation and the medical duty that arises when the condition of the patient is such that consultation is advisable or necessary. He there expressed the opinion that, in terms of medical judgment, defendant acted properly. In his deposition, however, Dr. Oles stated positively and without qualification that "during one of these spells when she was in the hospital and having so much trouble

* * * most general practitioners would have and should have called in a specialist."

Defendant says that if Dr. Duke or Dr. Oles had been called in earlier, they would have told defendant only that his diagnosis was a reasonable one. It is true that each of the specialists has stated by affidavit that defendant's diagnosis was reasonable for a general practitioner, but neither has said that his diagnosis would have been the same. Dr. Duke diagnosed Mrs. King's condition as pulmonary embolism shortly after he was called in. Dr. Oles testified by deposition that he would have considered the possibility of pulmonary embolism when she first reported that she was spitting up blood. The radiologist reported on December 4, 1966, that "these areas of infiltration could be secondary to emboli."

Defendant also says that the summary judgment proofs show that the course of events would not have been different if defendant had called in a specialist on November 20. We do not agree. According to the affidavits of Dr. Oles and Dr. Duke, "it cannot be stated with any degree of certainty" that the diagnosis of Mrs. King's condition as pulmonary embolism on November 6 or November 20, followed by conservative treatment, would have led to an improvement of her condition to the extent that an operation would have been unnecessary. Plaintiffs are not required to establish legal causation in terms of medical certainty, however, and Dr. Oles, looking at the entire matter in retrospect, was of the opinion that "her difficulty from the very beginning was probably on the basis of recurrent pulmonary emboli." He also stated that if pulmonary embolism was the correct diagnosis on November 16 and if Mrs. King had been treated for this condition on that date or shortly thereafter, "the chances of its [an operation] being necessary would be much less, certainly."

It is unnecessary for us to determine here whether a legal duty arises from the patient's request for consultation. It is also unnecessary to determine whether the summary judgment proofs in this case raise issues of negligence and causation for the trier of fact. We do say that defendant has not established conclusively that he exercised proper care in failing to call in a specialist before he did or that such failure was not a proximate cause of any damage to plaintiffs.

The judgments of the courts below are reversed, and the cause is remanded to the district court.