Kenneth WEIBY, et al., Appellants,

v.

Harold A. WENTE, Respondent.

No. 47107.

Supreme Court of Minnesota.

Feb. 24, 1978.

Marvin E. Lundquist, Mankato, for appellants.

Geraghty O'Loughlin & Kenney and Terence J. O'Loughlin, St. Paul, for respondent.

WAHL, Justice.

This is an action to recover damages for personal injuries sustained because of the alleged professional negligence of Dr. Harold Wente, a general practitioner, in the medical treatment of 17-year-old Kenneth Weiby on March 3, 1973. At the conclusion of trial, the jury found for defendant. Plaintiffs appeal from the order denying their alternative motions for judgment notwithstanding the verdict or a new trial and from the judgment entered in favor of defendant.[1] We affirm.

---

1. The denial of a motion for judgment n. o. v. is not an appealable order. *Mocuik v. Svoboda*, 253 Minn. 562, 566, 93 N.W.2d 547, 550 (1958). Denial of the motion for a new trial and the entered judgment are appealable under Rule 103.03(a)(e), Rules of Civil Appellate Procedure.

Complaining of sore throat and cough, plaintiff Kenneth Weiby [2] was taken to the Olmsted Community Hospital in Rochester on Sunday, February 25, 1973. The examining physician, Dr. Conicek, diagnosed acute tonsillitis, adenoiditis, and minor inflammation of the eardrums bilaterally; he prescribed a penicillin shot and cough medicine. Plaintiff did not return to school until the condition alleviated on the following Thursday.

On Friday afternoon, March 2, plaintiff came home from school complaining of a cold, a severe headache, and of feeling "lousy." His condition did not improve, and at about 9 a. m. Saturday, March 3, Glenn Weiby escorted his son to the emergency room of Olmsted Community Hospital where he was treated by the on-call physician, defendant Dr. Wente.

At this time, plaintiff's temperature was elevated, he complained of severe headache, and there was swelling from the margin of his left eyelid up into the eyebrow, described as "slight" though "noticeable." The parties disagreed over the presence of further swelling below or around the eye and the presence and degree of discoloration in the area of the swelling. There was no swelling of the eyeball itself, no proptosis (bulging) of the eyeball, no impairment of eye movement or double vision.

Defendant diagnosed plaintiff's condition as "acute upper respiratory infection with left frontal sinusitis" and prescribed oral and parenteral (shots) dosages of penicillin, decongestant tablets, and application of heat to the sinuses to encourage drainage. Defendant also gave plaintiff a painkiller.

Defendant generally outlined the diagnosis, treatment, and prognosis to Glenn Weiby. Mr. Weiby testified that he requested that his son be hospitalized but that defendant declined, assuring him that sinusitis was not serious until age 20. Dr. Wente contradicted this, testifying that hospitalization was never discussed, that he cautioned Mr. Weiby on the seriousness of sinusitis, particularly in minors, and that he asked Mr.

Weiby to call him the following morning so that he could arrange a consultation with a specialist at Methodist Hospital if Kenneth's condition had not improved.

Plaintiff's mother, an L.P.N., telephoned defendant four times during the next 24 hours. The first call was at about noon, to confirm the diagnosis and treatment discussed with Mr. Weiby; the second was at about 4:30 p. m., to report further swelling around the left eye. Defendant assured her that such swelling was due to the heat applications and that the antibiotics had not yet taken effect. In the third call, logged at 7:38 p. m., Mrs. Weiby inquired about using a steam vaporizer to help the sinuses drain. The fourth call, logged at 2:56 a. m., reported continued swelling and an increase in his temperature to 102°.

On her return from church at about 11 a. m. the following morning, Mrs. Weiby found that Kenneth's condition had dramatically worsened. The swelling had spread to the right side of his head, his speech consisted of "uh-huh" and his right side and right hand were paralyzed. With a neighbor's assistance, she took plaintiff to Methodist Hospital at about noon on Sunday, March 4.

On admission, plaintiff's symptoms included a 104.2° fever, lethargy, marked swelling of the left upper and lower eyelids, swelling and proptosis of the left eyeball, dilation of the left pupil and diminished left corneal reflex, restricted motion of the left eye, swelling on the left and right sides of the head, and hemiparesis (weakness) on the right side of his body. The symptoms, and the results of tests administered (head X-rays, echoencephalogram, blood tests, and spinal tap) indicated a preliminary diagnosis of cavernous sinus thrombosis with the possibility of cerebritis, cortico thrombophlebitis, and meningitis. Plaintiff was transferred to the neurosurgical/neurological section of St. Mary's Hospital at 6:30 p. m.

An angiogram was taken at St. Mary's Hospital and aggressive wide-spectrum an-

2. This opinion deals with plaintiff Kenneth Weiby only but he is joined in his appeal by plaintiff Glenn Weiby, his father, who seeks consequential damages.

tibiotic therapy was instituted. Plaintiff was in critical condition for several days and his recovery was slow. On March 7, 1973, the first of four seizures occurred. Upon recovery plaintiff required physical and speech therapy prior to and after discharge on April 3, 1973. Permanent injury includes slight physical impairment and loss of sensation in his right hand, a mild expressive aphasia, and a reduction in his I. Q. from as high as 124 to the present 99. Plaintiff will require daily anticonvulsants (Dilantin and phenobarbitol) for an indefinite period. Plaintiff returned to high school in the fall of 1973, graduated in August 1974, and enrolled in a building utilities mechanics program at the area vocational-technical school, while working part time.

Expert medical testimony was introduced at trial. Dr. Ronald Hoekstra, a pediatrician who had had training at the Mayo Clinic, testified for plaintiff that, based upon hospital records and the facts, when Dr. Wente saw plaintiff on March 3, 1973, plaintiff had orbital cellulitis and that plaintiff should have been hospitalized at that time for head X-rays, blood cultures, culture of the sinus drainage, and immediate institution of aggressive parenteral antibiotic therapy. Dr. Thomas McDonald, an ear, nose and throat specialist, who was a staff supervisor of Dr. Judd Chidlow at Mayo Clinic, testified for defendant that plaintiff did not have orbital cellulitis when seen by Dr. Wente and that the treatment rendered by Dr. Wente was the usual and customary treatment rendered under such circumstances, not only by general practitioners, but by ear, nose and throat specialists.

Medical testimony by Drs. Charles Koski and Chidlow, plaintiff's attending physicians on March 4, 1973, at Methodist Hospital, was introduced via depositions.[3] Over objection, portions of each deposition were deleted by the trial court as irrelevant and prejudicial because—

> " * * * they related to proper treatment of the patient in the condition and with the signs and symptoms that Kenneth Weiby exhibited on the afternoon of March 4th, and not the condition and the signs and symptoms that Kenneth Weiby exhibited on the morning of March 3rd when seen by Dr. Wente."

Other portions of the Chidlow testimony were deleted because they deviated from the standard of care relevant in a medical malpractice case against a general practitioner by discussing the care and skill normally exercised by a specialist.

Plaintiff contends before this court (1) that the deletions from the proffered Koski and Chidlow testimony by the trial court were prejudicial error since, in a progressive disease, they would support an inference that defendant was negligent in his prior diagnosis and treatment, and, (2) that the trial court improperly refused certain of plaintiff's 30 requests for instructions.

■■■ 1. Questions as to the relevance of proffered testimony are committed to the discretion of the trial court, and are not grounds for reversal or a new trial unless abuse is clearly demonstrated. *Renne v. Gustafson*, 292 Minn. 218, 223, 194 N.W.2d 267, 270 (1972). While the modern trend is toward liberal admissibility of relevant evidence,[4] there are competing considerations of policy, fairness and convenience. Specifically, probative value must be balanced against the risks of substantial prejudice, confusion or delay. *State v. Gavle*, 234 Minn. 186, 208, 48 N.W.2d 44, 56 (1951);

---

**3.** Dr. Koski resided in Fargo, North Dakota, at the time of the trial; Dr. Chidlow in Shreveport, Louisiana. The court apparently found that both witnesses were unavailable within the meaning of Rule 32.01(3)(b), Rules of Civil Procedure, and permitted the depositions to be read.

**4.** " * * * If the offered evidence permits an inference to be drawn that will justify a desired finding of fact, it is relevant. Reduced to simple terms, any evidence is relevant which logically tends to prove or disprove a material fact in issue." *Boland v. Morrill*, 270 Minn. 86, 98, 132 N.W.2d 711, 719 (1965). See, also, Rule 402, Minnesota Rules of Evidence (effective July 1, 1977).

*State v. Haney,* 219 Minn. 518, 520, 18 N.W.2d 315, 316 (1945).[5]

■ A careful examination of the record in the instant case does not disclose an abuse of discretion in excising portions of the depositions. First, the deletions had little probative impact on the central issue of whether defendant's diagnosis and treatment on March 3, 1973, amounted to professional negligence. The opinions of both Dr. Koski and Dr. Chidlow, elicited in the deleted testimony, were carefully limited to proper treatment of the patient in plaintiff's condition and with the signs and symptoms he had exhibited to them, as specialists, at the time of his admission to Methodist Hospital on the afternoon of March 4, which signs and symptoms were substantially different from those exhibited by plaintiff on March 3 when seen by defendant. The marginal relevance of this testimony seems substantially outweighed by the danger that the jury would be misled and confused as to the applicable standard of care by a general practitioner who attended plaintiff the previous day of " * * * that degree of skill, care, knowledge, and attention ordinarily possessed and exercised by other physicians under like circumstances in the same or a similar locality." *Fritz v. Parke, Davis & Co.,* 277 Minn. 210, 213, 152 N.W.2d 129, 131 (1967).

Moreover, it follows from the above discussion of the nominal probative value of the proffered testimony that its admission would not have altered the result here. Plaintiff and defendant elicited expert opinions on the issue of defendant's negligence from Dr. Hoekstra and Dr. McDonald. It is not the *number* of expert witnesses but the quality and credibility of their testimony which is critical to a trial's outcome.

2. The denied instructions in issue fall into two general categories, those which were refused because they were adequately presented in the general charge, and those which were refused because they were unsupported by the evidence.

With respect to the first group, plaintiff contends that he was entitled to specific instructions on the duty of a physician to keep abreast of contemporary medical practices, and to perform reasonable investigations and tests; that improper diagnosis and treatment constitutes negligence; and that the failure to refer a patient to a specialist, when called for under the appropriate standard of care, constitutes negligence and a breach of trust.

■ The general rule that a party is entitled to specific instructions based upon his theory of the case is subject to several limitations, two of which are pertinent here. First, such requested instructions may be refused if their substance is adequately contained in the general charge, *Poppenhagen v. Sornsin Const. Co.,* 300 Minn. 73, 81, 220 N.W.2d 281, 286 (1974); *Smith v. The Kahler Corp. Inc.,* 297 Minn. 272, 282, 211 N.W.2d 146, 153 (1973). In fact, general charges are preferred to more specific instructions. *Lhotka v. Larson,* 307 Minn. 121, 127, note 16, 238 N.W.2d 870, 875 (1976). Second, such requested instructions should be refused if they are argumentative, or tend, by repetitiveness, to unduly emphasize one side of the issue. *Malik v. Johnson,* 300 Minn. 252, 257, 219 N.W.2d 631, 635 (1974); *Floen v. Sund,* 255 Minn. 211, 215, 96 N.W.2d 563, 567 (1959).

■ In the instant case, the trial court instructed the jury on the issues of professional negligence, including the applicable standard of care, the duty to refer to a specialist, and the duty to fully advise a patient of his condition and potential dan-

5. Rule 403 of the new Minnesota Rules of Evidence, effective July 1, 1977, states: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

The Comment to Rule 403 states that it is consistent with existing Minnesota practice in this regard. See, *State v. Bott,* Minn., note 3, 246 N.W.2d 48, 53 (1976), discussing with approval Rule 403, Federal Rules of Evidence, which is identical to the present Minnesota rule.

gers. The judge outlined plaintiff's contentions: negligent diagnosis and treatment, failure to perform reasonable tests, failure to refer to a specialist. The instructions given were appropriate and sufficient. The additional instructions could properly be denied in accordance with the above principles.

■■ The second group of contested instructions, the instructions which were refused because they were unsupported by the evidence, include an instruction that Dr. Wente was liable for damages incurred because of his failure to inform himself of the surrounding "facts and circumstances"—a reference to Dr. Wente's failure to check the records of the earlier examination by Dr. Conicek. Upon examination of the record, we find that the trial court was correct in remarking:

" * * * There was no claim either in argument or in the evidence that had Dr. Wente checked the records of Dr. Konachek [sic] on March 3, 1973 that his diagnosis or treatment would have been any different, nor was there any claim or evidence that failure on his part to do so resulted in any way in misdiagnosis or treatment of Kenneth Weiby by Dr. Wente."

Since there must be evidence to support the theory advanced by a litigant before he is entitled to an instruction on the proposition involved in the theory, the proposed instruction was correctly refused. *Lauer v. Loecken*, 295 Minn. 345, 204 N.W.2d 817 (1973); *Manion v. Tweedy*, 257 Minn. 59, 100 N.W.2d 124 (1959).

■■ Similarly, the trial court found that two proposed instructions on res ipsa loquitur were inapplicable and unsupported by the evidence. An instruction on res ipsa loquitur is not warranted until the plaintiff produces sufficient evidence to establish the three necessary conditions of the doctrine:

" * * * [B]efore a plaintiff is entitled to submit his claim to the jury on the theory of res ipsa loquitur, he must establish three things with regard to the injury-producing event: (1) The event must be of a kind which ordinarily does not

occur in the absence of someone's negligence; (2) it must be caused by an agency or instrumentality within the exclusive control of the defendant; and (3) it must not have been due to any voluntary action or contribution on the part of the plaintiff." *Spannaus v. Otolaryngology Clinic*, 308 Minn. 334, 337, 242 N.W.2d 594, 596 (1976).

A review of the record does not disclose adequate evidence to establish the first two conditions. No witness was prepared to testify that the immediate institution of aggressive wide-spectrum antibiotic therapy upon plaintiff's March 3 visit to defendant would necessarily have prevented the subsequent complications, nor was the injury-producing organism, and therefore appropriate antibiotic, ever finally identified. Again, a party is not entitled to an instruction which is not adequately supported by the evidence. *Lauer v. Loecken, supra, Manion v. Tweedy, supra.*

Affirmed.

OTIS, J., took no part in the consideration or decision of this case.