**Mark KOHN, Respondent,**

v.

**LA MANUFACTURE FRANCAISE DES PNEUMATIQUES MICHELIN, Michelin Tire Corporation, Appellants.**

Nos. C8–91–873, CX–91–874.

Court of Appeals of Minnesota.

Oct. 22, 1991.

Review Denied Dec. 13, 1991.

Robert A. Awsumb, Louise A. Dovre, Rider, Bennett, Egan & Arundel, Minneapolis, for respondent.

Michael Berens, Andrea L. Sahlin, Kelly & Berens, P.A., Minneapolis, for La Manufacture Francaise Des Pneumatiques Michelin.

Martin Burke, Bridget M. Ahmann, Faegre & Benson, Minneapolis, Theodore B. Van Itallie, Patterson, Belknap, Webb & Tyler, New York City, for Michelin Tire Corp.

Considered and decided by NORTON, P.J., and LANSING, and SHORT, JJ.

## OPINION

LANSING, Judge.

A product manufacturer and designer appeal the trial court's denial of an alternative motion for judgment notwithstanding the verdict (JNOV) or new trial on a jury determination of product defect. We affirm the trial court's rulings on the admissibility of tire compression test results, the sufficiency of the evidence to support the verdict, and the denial of a collateral source reduction. The French design company separately appeals the denial of JNOV for lack of personal jurisdiction, and we reverse.

## FACTS

Mark Kohn was seriously injured when he attempted to mount a 16–inch Michelin light truck tire on a 16.5–inch rim. As Kohn inflated the tire, one of two bead wire bundles broke, causing an explosive decompression which flung the tire from the mounting machine and into Kohn. The jury found that the tire was defectively designed and unreasonably dangerous. The jury's special verdict apportioned joint and several liability against Michelin Tire Corporation, the American manufacturer and distributor of the tire and La Manufacture Francaise Des Pneumatiques Michelin, the French company that designed the tire.

## ISSUES

1. Are the French company's contacts with Minnesota sufficient to permit the exercise of personal jurisdiction?

2. Did the trial court err in admitting the results of tire compression and bead bundle studies?

3. Does the evidence sustain the jury's finding of design defect?

4. Does the insurer's assignment of its worker's compensation subrogation interest to the injured employee preclude assertion of that interest under the collateral source rule?

## ANALYSIS

I

Minnesota may assert personal jurisdiction over a foreign corporation when the corporation commits an act causing in-

jury or property damage in Minnesota. Minn.Stat. § 543.19, subd. 1 (1986). The statute's jurisdictional reach is limited if (1) Minnesota has no substantial interest in providing a forum, or (2) the exercise of jurisdiction would violate fairness and substantial justice. *Id.*

■ Minnesota has a substantial interest in providing a forum for its citizens injured by acts of foreign corporations. *See* Minn. Const. art. I, § 8. As applied to Kohn, that interest is diminished by the availability of full recovery from Michelin, the manufacturer and distributor of the tire. *See Larsen v. General Motors Corp.*, 391 F.2d 495, 501 (8th Cir.1968); *Restatement (Second) of Torts* § 397 (1965). Michelin, as a co-defendant, is also jointly and severally liable for the entire verdict. *See Hosley v. Armstrong Cork Co.*, 383 N.W.2d 289, 292 (Minn.1986). The unavailability of a complete remedy is not a primary consideration.

■ The second statutory requirement, that jurisdiction be consistent with fairness and substantial justice, essentially codifies the "minimum contacts" test of *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). *See Vikse v. Flaby*, 316 N.W.2d 276, 282 (Minn.1982). Minimum contacts are measured by evidence of purposeful availment of the privilege of conducting activities within the jurisdiction. *Rostad v. On–Deck, Inc.*, 372 N.W.2d 717, 719 (Minn. 1985) (citing *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958)), *cert. den.* 474 U.S. 1006, 106 S.Ct. 528, 88 L.Ed.2d 460 (1985).

■ The trial court correctly analyzed the French company's activities under a stream-of-commerce theory that applies to products placed into commerce for purchase by consumers in the forum state. *World–Wide Volkswagon Corp. v. Woodson*, 444 U.S. 286, 297–98, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980). The stream-of-commerce analysis takes into account indirect contacts, but still requires that a claimant show that the foreign company purposefully established enough contacts with Minnesota to justify jurisdiction. *See Asahi Metal Indus. Co. v. Superior Court of Cal., Salano County*, 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987); *Rostad*, 372 N.W.2d at 720–21.

■ In *Asahi*, the Supreme Court rejected California's exercise of personal jurisdiction over the Japanese manufacturer of a component part of a defective tire. Four justices concluded that a foreign manufacturer's placing a component product in commerce with the awareness that it would be marketed in a complete product to the forum state did not satisfy the minimum contacts requirement. *Id.*, 107 S.Ct. at 1032. Four justices disagreed with that analysis but concurred in the judgment. *Id.* at 1034. (Brennan, concurring in part). The remaining justice, also concurring in the judgment, distinguished mere knowledge from purposeful availment, and concluded that the jurisdictional analysis should turn on the volume, value and hazardous character of the components. *Id.* at 1037 (Stevens, concurring in part).[1]

Although the French company provided the design, not a component part of Michelin's tire, *Asahi's* holding is instructive. However, without more evidence on the relationship between Michelin and the French company or evidence of the contents of their agreement or volume of their enterprise, Kohn has not met his burden to establish jurisdiction. *See McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 56 S.Ct. 780, 80 L.Ed. 1135 (1936).

The record demonstrates that the French company has no offices, agents, employees, property or bank accounts in Minnesota; nor does it advertise here. Although Kohn argues that the French company specifically designed the tire for sale throughout the United States, including Minnesota, there is nothing in the record to support this propo-

---

1. The French company asserts that Minnesota adopted the *Asahi* plurality position in *Olmsted County v. Trailer Equip. Warehouses, Inc.*, 421 N.W.2d 395 (Minn.App.1988). *Olmsted* does not address the split opinions in *Asahi*. This issue is directly addressed in a later decision, *Stanek v. A.P.I., Inc.*, 474 N.W.2d 829 (Minn.App.1991).

sition. The licensing agreement is not in evidence. It is undisputed that Michelin and the French company are sister corporations, but there is no evidence of the volume or extent of their common enterprise. The evidence of communication between the French company and Michelin's New York office does not constitute acts purposefully directed to Minnesota and, without more connecting evidence, Michelin's acts cannot be attributed to the French company.

Courts have more closely examined relationships among foreign designers, manufacturers, and distributors when a state's interest in obtaining full relief for its injured citizens is at risk. *See Warren v. Honda Motor Co.*, 669 F.Supp. 365 (D.Utah 1987). Kohn's ability to obtain full recovery from Michelin and the extremely limited evidence of the nature of the relationship between the French company and Michelin distinguishes this case from the *Honda* line of cases. The *Honda* cases that found jurisdiction over the foreign designer did so on a greater record of an interconnected parent-subsidiary distribution network in circumstances where recovery would otherwise be limited. *See also Wessinger v. Vetter Corp.*, 685 F.Supp. 769 (D.Kan.1987).

■ We recognize, as Kohn argues, that denying jurisdiction allows a corporation to structure itself to avoid suit in foreign jurisdictions. However, due process considerations permit defendants to structure their primary conduct to achieve a minimum assurance of where they will be subject to suit. *See World–Wide Volkswagon*, 444 U.S. at 297, 100 S.Ct. at 567, *Real Properties, Inc. v. Mission Ins. Co.*, 427 N.W.2d 665, 668 (1988). The assertion of personal jurisdiction is not supported by the record.

## II

■ The trial court received in evidence, over objection, testimony of tire mismatch tests conducted by the University of Michigan Transportation Research Institute (UMTRI) and a bead bundle study conducted by Kohn's expert witness. Trial courts have substantial latitude on evidentiary rulings and will not be reversed unless the ruling is a clear abuse of discretion. *See Weiby v. Wente*, 264 N.W.2d 624, 627 (Minn.1978).

■ The objections to the UMTRI study relate to hearsay and relevance. Kohn's expert verified that a tire and bead bundle design identical to the one involved in Kohn's accident was included in the UMTRI tests. The expert's testimony established that the Michelin tire, in a mismatch situation, exploded at a p.s.i. lower than that of other tires, and that a Goodyear tire exploded at a p.s.i. greater than that which a standard air compressor could reach. Although the UMTRI tests were conducted in 1990, testimony established that testing could have been performed in the early 1980's. The evidence is relevant to design defect, the availability of an alternative design, and the feasibility of testing. We do not agree that any probative value was outweighed by prejudice. The ways in which the tests varied from the actual accident were elicited in both direct and cross-examination and go to weight rather than admissibility.

■ Allowing the UMTRI tests to be introduced as business records under Minn. R.Evid. 803(6) required foundation by a custodian or other qualified witness that the evidence was kept in the course of a regularly conducted business activity, and that it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, *National Tea Co. v. Tyler Refrigeration Co.*, 339 N.W.2d 59, 61 (Minn.1983). It is not required that the person who prepared the report testify. *Id.* The expert testified that he was familiar with the results of the UMTRI tests and how they were conducted. These test results were kept in the regular course of the expert's business. Categorizing the test results as a business record was within the court's discretion.

We are not persuaded that the UMTRI tests were inherently unreliable. The tests were existing documents not prepared for this litigation. Although commissioned by the Budd Company, a tire rim designer,

there is neither a showing that UMTRI was biased as a result of the relationship nor is there an apparent reason for a rim manufacturer to influence tire strength tests. Kohn, not the rim manufacturer, introduced the tests. UMTRI was conducting tests and preparing reports directly related to transportation research, the function of its organization.

■ Similarly, the expert's bead study was supported by his testimony detailing the test's methodology. Although the study did not precisely duplicate Kohn's accident, the expert confirmed the use of Michelin tires with the same bead design as the tire that caused Kohn's injuries. The weight to be given the bead study was properly left to the jury. The trial court did not err in allowing the tests into evidence.

### III

■ In denying Michelin's posttrial motion for JNOV or, in the alternative, new trial, on the ground that the evidence was not sufficient to support a jury verdict of design defect, the trial court stated:

Viewing the evidence in the light most favorable to [Kohn], there is evidence in the record that at the time [Michelin] manufactured the tire involved in [Kohn's] accident, (1) [Michelin] knew that people were mistakenly attempting to mount 16 inch light truck tires on 16.5 inch rims; (2) [Michelin] knew of the dangers involved in this mismatch; (3) [Michelin] had the technological expertise to perform tests in an effort to eliminate these dangers; (4) there was an alternative tire design on the market that had eliminated the dangers involved in the mismatch; (5) [Michelin] had the technological expertise to design a tire that would have eliminated the dangers involved in the mismatch; and (6) [Michelin] took no action to eliminate the dangers involved in the mismatch.

The trial court's ruling is supported by the record. Accidents resulting from attempts to mount 16-inch tires on 16.5-inch rims began occurring in the 1970's. The accidents corresponded with tire manufacturers' use of tubeless tire designs and reliance on the metric system. Michelin was aware of mismatch explosions in the mid–1970's, substantially before the manufacture of the tire at issue. Even though it was feasible to perform mismatch explosion tests in the 1980's, Michelin did not. Goodyear designed a tire in 1979 that avoided mismatch explosions. The jury had evidence on which they could find that the Goodyear tire was safer overall than the Michelin tire. The jury's verdict is adequately supported by the evidence.

### IV

■ Liberty Mutual Insurance Company, Kohn's worker's compensation carrier, asserted a subrogation claim for $39,-404.35 in benefits paid to Kohn. In a pretrial settlement, Kohn agreed to pay Liberty Mutual $5,000, plus 15% of any net recovery from Michelin and the French company up to a maximum of $15,000. Michelin argues that the settlement effectively waived approximately $29,300 of Liberty Mutual's subrogation rights, and Michelin is entitled to a collateral source offset in that amount.[2] Michelin contends that these rights were not "asserted" for purposes of the collateral source statute, Minn.Stat. § 548.36 (1988).

By its terms, the collateral source reduction does not apply to amounts paid for which a subrogation right has been "asserted." Minn.Stat. § 548.36, subd. 2(1). Liberty Mutual did not waive its subrogation interest, however, but assigned it to Kohn who "asserted" the interest for both his and Liberty Mutual's benefit. This is distinguishable from the settlement between the insurance carrier and the defendant in *Folstad v. Eder*, 467 N.W.2d 608 (Minn.1991). The *Folstad* settlement eliminated the assertion of subrogation rights because they were no longer part of the suit. *Id.* at 613. Kohn, as plaintiff, was obligated to fully assert the assigned sub-

---

**2.** The waived amount is computed as the difference between benefits paid to Kohn and the maximum amount Liberty Mutual can collect under the agreement.

rogation rights because Liberty Mutual's share was computed as a percentage of the net verdict amount.

Liberty Mutual and Kohn agreed to be governed by the settlement instead of the statutory formula in Minn.Stat. § 176.061, subd. 6 (1988). Any increase in Kohn's recovery is at Liberty Mutual's and not Michelin's expense. *See Buck v. Schneider*, 413 N.W.2d 569, 572 (Minn.App.1987). As the trial court observed, this assignment of the worker's compensation subrogation interest was essential to the pretrial settlement that removed three additional parties, the rim manufacturer, the rim seller, and Kohn's employer. The settlement is not prohibited by the collateral source rule and, by enabling settlements that reduce litigation, advances a desired public policy.

## DECISION

We affirm the trial court's denial of JNOV on the evidentiary rulings and the sufficiency of evidence to support the jury's verdict. We also affirm the denial of the collateral source offset. We reverse the denial of the French company's JNOV on personal jurisdiction and remand to correct the judgment.

Affirmed in part and reversed in part.

NORTON, J., concurs specially.

NORTON, Judge (concurring specially).

While I concur with the result of the majority opinion, were it not for Minnesota's joint and several liability statute, I would find that there are adequate contacts to assert personal jurisdiction. The French company designed the tire, had a close relationship with the manufacturer, shared ideas with the manufacturer's New York office, and adjusted its design for distribution throughout the United States, including Minnesota.

Contrary to the majority, I do not believe that a determination of jurisdiction should rest on labeling corporate relationships. Any distinction between parent-subsidiary and sister corporation relationships should not be a differentiating factor for finding jurisdiction. We must examine the totality of business contacts between corporations in order to have a fair and realistic assessment of the circumstances of their relationship.

The majority refers to the Honda line of cases which involve a parent-subsidiary relationship. Although this parent-subsidiary relationship is a consideration, courts appear to have focused on the totality of the corporate relationship. *See Wessinger*, 685 F.Supp. at 777–78 (court concluded that Honda Research and Development Company was subject to its jurisdiction since Honda Research knew that finished product made from its design would be sold in Kansas because it regularly sold designs to its parent which sold to another of its subsidiaries which distributed the product throughout the United States).

We are reminded every day that we are now living in a global economy. The real world of business does not function according to our traditional notions of jurisdiction. It is clear that the French company could reasonably have anticipated being haled into the Minnesota courts were it not for case law lagging behind international business practices. *See Rostad*, 372 N.W.2d at 719–20 (following traditional minimum contacts analysis).