Richard Thomas KINNING, a minor, by Thomas Robert Kinning, Jr., his father and natural guardian, Appellants,

v.

Dr. Ronald John NELSON, et al., Respondents.

No. 48813.

Supreme Court of Minnesota.

June 15, 1979.

Rischmiller, Wasche & Knippel and Robert Wm. Rischmiller, Minneapolis, for appellants.

Geraghty, O'Loughlin & Kenney, James W. Kenney and Terence O'Loughlin, St. Paul, for respondents.

Heard before PETERSON, SCOTT, and KENNEDY, JJ., and considered and decided by the court en banc.

PETERSON, Justice.

This is a medical malpractice action brought by plaintiff, Thomas Robert Kinning, as father and natural guardian on behalf of his son, Richard T. Kinning, against defendants, Drs. Ronald J. Nelson and Thomas O. Nichols, general practitioners, who rendered care to Richard in April and May 1965. The matter, tried before a jury, resulted in a verdict for defendants. Plaintiff appeals from the trial court's order denying his motion for a new trial. It is important to note on this appeal that plaintiff does not claim the verdict in favor of defendants is unsupported by the evidence. Rather, plaintiff seeks a new trial on grounds that the trial court's instructions were erroneous in several respects and that the trial court erred in refusing to permit one of plaintiff's expert witnesses to testify on the issue of negligence. We affirm.

Richard Kinning, now age 14, was born on April 9, 1965, at St. John's Hospital in St. Paul and was delivered by Dr. Nelson. Upon being discharged from the hospital on April 14, Richard was a normal and healthy baby, the only exception being that before discharge he developed small red areas on the medial aspect of each of his great toes from kicking his feet together, for which Dr. Nichols prescribed an antibiotic ointment.

The redness on the left toe cleared without incident. However, Richard developed a serious infection of the right leg for which he was treated by defendants on various days in April and May 1965. On May 21, an X ray of the right leg disclosed that the infection had reached the bone of Richard's upper right leg, destroying the growth plate in the lower end of the femur. Richard was hospitalized by Dr. Nichols with the diagnosis of osteomyelitis, a bone infection with resulting inflammation.

Plaintiff alleged that defendants were negligent in failing to perform certain tests and procedures which would have enabled them to diagnose and treat the osteomyelitis at an earlier date, preventing destruction of the growth plate. Defendants' position was that they exercised the degree of care and skill normally exercised by general practitioners in like circumstances in 1965; that the failure to diagnose osteomyelitis earlier was an honest error; and that performance of the medical tests and procedures espoused by plaintiff would not have resulted in an earlier diagnosis of osteomyelitis or significantly different treatment which would have prevented destruction of the growth plate.

The parties disagreed on the evidence concerning Richard's medical care and treatment during the period before May 21, 1965, in three primary respects: First, there was conflicting testimony whether Richard's physical condition appeared to be worsening from April 21 until May 21, 1965. Second, although defendants denied it, Richard's mother claimed she had telephone discussions with Dr. Nichols on April 16 and 17 and with Dr. Nelson on April 20, 1965, detailing Richard's deteriorating condition. Third, there was conflicting expert testimony whether certain medical tests should have been performed by defendants and whether performance of such tests would have resulted in an earlier diagnosis of osteomyelitis or significantly different treatment than defendants actually provided.

At trial, plaintiff's attorney attempted to elicit from Dr. Joseph J. Sockalosky his opinions as a medical expert of the standard of care of general practitioners in the Twin Cities in 1965 and whether defendants had exercised such care in treating Richard.

The trial court sustained defendants' objection to Dr. Sockalosky's testimony on the ground that insufficient foundation had been laid to establish that Dr. Sockalosky was qualified to give the requested opinions. Another medical expert was allowed to testify for plaintiff on these issues. At oral argument before this court, plaintiff's attorney admitted that Dr. Sockalosky's testimony would not have been significantly different from the testimony of the expert who was allowed to testify.

1. The trial court's instructions to the jury concerning the legal duty of a physician were as follows:

" * * * [I]n performing professional *diagnostic* services *and treatment* for a patient, a doctor must use that degree of skill and learning which is normally possessed and used by doctors in good standing in a similar practice in similar communities under like circumstances. In the application of the skill and learning the doctor must also use reasonable care. The fact standing alone that a good result may not have followed a *diagnosis* and treatment by a doctor is not evidence of negligence or unskillful treatment. *You are further instructed it is the law of Minnesota that while it is the duty of the physician to use due care*, he is not an insurer of a good result nor a guarantor of a cure from his treatment, *and where under the usual practice of his profession by practitioners similarly situated in like communities different courses of procedures may properly and reasonably. be applied, the doctor has a right to use his best judgment in the selection of equally available proper and reasonable procedures.* He is not responsible for an honest error in judgment in choosing between accepted methods of treatment." (Italics supplied.)

Except for the italicized portions, this instruction was a verbatim restatement of 4 Minnesota Practice, Jury Instruction Guides (2 ed.), JIG II, 425 G–S. Upon concluding its charge to the jury, the trial court asked counsel whether there were any additions or corrections. Defendants' attorney requested that the trial court make clear to

the jury that a doctor is not responsible for an honest error in judgment in choosing between accepted methods of diagnosis or in choosing between accepted methods of treatment. The trial court thereupon advised the jury:

"It is brought to my attention, ladies and gentlemen, and so I'm sure there is no mistake in what I suggested to you or any misunderstanding, when we talked about the law of Minnesota as it defined the test of negligence in the more defined area or the more specific area of medical negligence, I referred to the fact that a physician is not responsible for an honest error in judgment in choosing between accepted methods of treatment. Indeed, what should have been said in addition is that he `is not responsible for an honest error in judgment in choosing between accepted methods of diagnosis and treatment, so there is no confusion about that whatsoever."

Plaintiff contends the trial court's clarifying instruction and these additions to the standard JIG instruction were prejudicial errors because they unduly emphasized defendants' view of the case.

■ There was no error in the trial court's clarifying instruction. This case involved claims of negligent diagnosis as well as negligent treatment. One of plaintiff's principal contentions was that defendants should have earlier diagnosed and treated Richard's osteomyelitis. Defendants' attorney therefore requested the trial court to insert in the standard JIG instruction the word "diagnosis" wherever the word "treatment" appeared. The trial court did so except for the last sentence of the instruction dealing with "an honest error in judgment." The clarifying instruction was given by the trial court not to emphasize instructions favorable to defendants but simply to correct an inadvertent failure to include the word "diagnosis" in its original instruction concerning "an honest error in judgment." By giving the clarifying instruction, the trial court simply advised the jury of the principle of law applicable to a crucial issue in the case.

■ Other than inserting the word "diagnosis," the trial court's instructions concerning the duty of a physician differed from JIG in only two other respects. First, the trial court inserted the words "[y]ou are further instructed it is the law of Minnesota that while it is the duty of the physician to use due care" before the statement that "he [a doctor] is not an insurer of a good result nor a guarantor of a cure from his treatment." This addition was an accurate statement of the law and in no way prejudiced plaintiff. Second, the trial court concluded the statement by adding, "and where under the usual practice of his profession by practitioners similarly situated in like communities different courses of procedures may properly and reasonably be applied, the doctor has a right to use his best judgment in the selection of equally available proper and reasonable procedures." This addition was also an accurate statement of the law because it is an almost verbatim restatement of instructions approved by this court in *Manion v. Tweedy*, 257 Minn. 59, 67, 100 N.W.2d 124, 130 (1959).

■ Under the present facts, the trial court did not err in making additions to the standard JIG II, 425 G–S, instruction.[1]

2. Plaintiff also contends the trial court erred in not granting plaintiff's proposed instructions on the legal duty of a physician. These instructions illustrated that negligent failure by a physician to ascertain essential preliminary information upon which to form a judgment can constitute negligent error in judgment by that physician. Plaintiff requested that these instructions be given along with that portion of JIG II, 425 G–S, which states that an honest error in judgment on the part of a

doctor is not evidence of negligence. The gravamen of plaintiff's argument is that the terms "honest" and "judgment" may have been confusing to members of the jury without a clear definition of what constituted an honest judgment and, therefore, members of the jury may well have mistakenly believed they had to find dishonesty in order to find defendants guilty of malpractice.

■ The trial court did not err in refusing to give plaintiff's proposed instructions. A party is not entitled to a specific instruction on his theory of the case when the substance of the requested specific instruction is adequately contained in the general charge. *Weiby v. Wente*, 264 N.W.2d 624, 628 (Minn.1978).[2] Plaintiff's requested instructions were in part covered by the trial court's use of JIG II, 425 G–S, and to the extent not specifically covered, the substance of the instructions was utilized by plaintiff's attorney in his closing argument to explain the standard of care contained in the standard JIG instruction. The trial court's general charge fairly and correctly stated the applicable law and did not overemphasize one side of the case. *Cameron v. Evans*, 241 Minn. 200, 208, 62 N.W.2d 793, 798 (1954). There is no indication in the record that members of the jury were confused by the terms "honest" and "judgment" or believed they had to find dishonesty by defendants in order to find them guilty of malpractice.

■ 3. Plaintiff further argues that the trial court's summation of the evidence was prejudicially slanted toward defendants because it did not include the testimony of Richard's mother concerning Richard's con-

1. The trial court also instructed the jury as follows: "You can determine the standard of professional learning, skill and care required of the defendant only from the opinion of the physicians and surgeons, including the defendants who have testified as expert witnesses to that standard or such standard." Plaintiff now argues that this instruction was incorrect because the present case involved matters within the common knowledge of lay persons and that therefore the jurors themselves could determine the proper standard of care. Because the record does not show this issue was ever presented to the trial court, the instruction became the law of the case and may not now be challenged for the first time on appeal. *Bakke v. Rainbow Club, Inc.*, 306 Minn. 99, 235 N.W.2d 375 (1975).

2. General charges are ordinarily preferred to more specific instructions. *Weiby v. Wente*, 264 N.W.2d 624, 628 (Minn.1978).

dition at the time of the alleged telephone calls from her to defendants or at the time Richard was examined by defendants in their clinic, her testimony that Richard's condition progressively deteriorated during the relevant period of time, or the fact that no diagnostic tests were taken by defendants before the diagnosis of osteomyelitis and the purpose of such tests. Plaintiff's contention illustrates the problems which can arise when a trial court attempts to summarize the evidence in its charge to the jury. However, a reading of the trial court's summation in the present case indicates that the trial court's recital of the evidence was an accurate and fair synopsis of the undisputed facts.

In its summation, the trial court basically reviewed the history of Richard's problem and the course of treatment performed by defendants. These facts were not disputed. The testimony plaintiff contends should have been included in the summation was disputed testimony. In effect, plaintiff complains that the trial court did not give a detailed description of each view of the disputed facts in this case. While the testimony on the disputed issues was a proper basis for argument and discussion by each attorney, the trial court was not required to include such controverted testimony in its summation of the evidence.

In sum, the trial court gave in its recital of the evidence a synopsis of the more important, undisputed facts. The synopsis was fair and accurate and did not unduly stress defendants' view of the evidence.[3]

■ 4. Plaintiff's final argument involves whether the trial court erred in excluding the opinion testimony of Dr. Sockalosky concerning the care and skill exercised by general practitioners in 1965. The competence of a witness to testify on a particular matter is a question of fact peculiarly within the province of the trial court, and its ruling will not be reversed unless it is based on an erroneous view of the law or is clearly not justified by the evidence. We have required medical witnesses to have both sufficient scientific knowledge and practical experience concerning the subject matter of the offered testimony. *Cornfeldt v. Tongen*, 262 N.W.2d 684 (Minn.1977). In *Cornfeldt* we noted that a trial court's determination of the qualifications of an expert witness rests primarily on "occupational experience" and explained that an expert "must have had basic education and professional training as a general foundation for his testimony, but it is a practical knowledge of what is usually and customarily done by physicians under circumstances similar to those which confronted the defendant charged with malpractice that is of controlling importance in determining competency of the expert to testify to the degree of care against which the treatment given is to be measured." 262 N.W.2d 692.

■ The trial court's finding that insufficient foundation was laid establishing that Dr. Sockalosky was qualified to testify as a medical expert concerning a general practitioner's standard of care in 1965 in the Twin Cities was justified by the evidence. In 1965, Dr. Sockalosky was a freshman in college and totally lacked medical training. He did not complete medical school until 7 years after the incident involved in this case. During voir dire examination, Dr. Sockalosky claimed to have a "well-founded opinion" as to the forms of therapy being recommended to general practitioners in cases such as this in 1965. However, he admitted:

"Q. Doctor, am I correct the opinions that you hold in this case principally are concerned with not what general practitioners in the Twin Cities were in fact doing in cases like this in 1965, but what you feel were the recommended standard forms of therapy back in 1965; is that correct?

"A. That's correct.

"Q. And it is as to the latter that you feel you have a well-founded opinion and not as to the former; is that correct?

---

**3.** Moreover, the trial court on two occasions specifically instructed the jury that the trial court's summation of the facts was in no sense binding upon the jury.

"A. It's to the latter, yes."

Dr. Sockalosky further admitted:

"Q. Do you agree, doctor, that as you sit here now you in fact do not know how the average general practitioner was in fact handling cases of the type we're involved with here in the Twin Cities metropolitan area back in 1965?

"A. No. I do not know that for a fact.

"Q. For example, whether the average general practitioner in the Twin Cities metropolitan area in 1965 would or would not have gotten a culture, you have no first-hand personal knowledge.

"A. No first-hand personal knowledge, no."

Dr. Sockalosky conceded that his opinion regarding forms of therapy being recommended to general practitioners in 1965 was principally based on literature, which consisted of three books and three journal articles. Whether any of this literature was commonly referred to by general practitioners in 1965 was not known by Dr. Sockalosky. Most of it had been published after the involved incident.

Dr. Sockalosky claimed part of his opinion on the standard of care in 1965 was based on consultations with doctors during his residency. Yet, he admitted that the doctors were pediatric specialists, not general practitioners, and that the consultations did not specifically refer to the standard of care in 1965 or to one specific kind of illness. In relation to Dr. Sockalosky's medical education, consultations with other physicians, and review of literature, the court asked Dr. Sockalosky whether he could "tie any of those things to the practice in the general community in 1965." Dr. Sockalosky admitted that he could not.

It should be noted the trial court's exclusion of opinion testimony by Dr. Sockalosky did not deprive plaintiff of expert medical testimony. Plaintiff's other medical expert was allowed to testify, and it is clear Dr. Sockalosky's testimony would not have been significantly different from the testimony of the other expert witness. Under these circumstances, the trial court's exclusion of

Dr. Sockalosky's opinion testimony was not erroneous.

Affirmed.

OTIS, J., took no part in the consideration or decision of this case.