**United States Court of Appeals**
**FOR THE EIGHTH CIRCUIT**

No. 97-1406

Shirley Ann Klisch, Gary Klisch,          *
                                          *
          Appellants,                     *
                                          * Appeal   from   the   United
States
          v.                              * District Court for the
                                          * District of North Dakota.
MeritCare Medical Group, Inc.,            *
formerly known as Fargo Clinic            *
MeritCare,                                *
                                          *
          Appellee.                       *

          Submitted:  November 19, 1997

                                                                  Filed:
January 27, 1998

Before BEAM, HEANEY, and JOHN R. GIBSON, Circuit Judges.

HEANEY, Circuit Judge.

     Shirley Ann and Gary Klisch appeal from a jury's
verdict finding MeritCare Medical Group not liable in
this medical malpractice action.   Specifically, the
Klisches challenge four jury instructions as erroneous
and warranting a new trial.   The district court judge
denied the Klisches' motion for a new trial.   We affirm.

I.

On August 13, 1993, Shirley Ann Klisch (Klisch) had laparoscopic surgery which included tubal sterilization and a hysterectomy. Klisch had her initial surgery at the MeritCare Medical Group Clinic (MeritCare) located in Bemidji, Minnesota. Shortly afterwards Klisch experienced medical complications, including a bowel injury, she claimed were due to the negligence of the doctors who performed the surgery. MeritCare responded that such complications were common in this type of procedure and they were not at fault.

After receiving follow-up care at the MeritCare Clinic, Klisch continued to experience great pain. Thereafter, she went to the University of Minnesota Hospital in Minneapolis. She underwent emergency surgery for an infection in her abdominal cavity and a significant part of her small intestine was removed. She also lost part of her colon.

The Klisches brought suit based on MeritCare's alleged medical malpractice. After both sides presented evidence at trial, the jury found for MeritCare. The Klisches immediately moved for a judgment as a matter of law. In response to the Klisches' motion for a judgment as a matter of law, the district court judge stated:

> In this case, the plaintiffs argue that the substantial weight of the evidence does not support a defense verdict. At trial, both parties presented expert testimony to support their case. In this court's opinion, the jury could have decided in favor of either party

based on the evidence presented at trial.  The court notes, however, that the defendants presented compelling expert testimony supporting their contention that the plaintiffs' injuries could have occurred without any negligence on the part of the defendant physicians.  The plaintiffs presented no conflicting expert testimony.  Therefore, because there was sufficient evidence upon which a reasonable juror could find in favor of the defendant, the plaintiffs' motion for judgment as a matter of law is [denied].

Klisch v. MeritCare Medical Group, Ltd., No. A3-95-123, at 2 (D. N.D. Jan. 13, 1997).

On appeal, Klisch argues that her motion for a new trial should have been granted because the four jury instructions were improper and were impermissibly biased in favor of MeritCare. In essence, she argues that absent the erroneous jury instructions, the jury would not have found for MeritCare.

## II.

"We review the district court's jury instructions for abuse of discretion." Aerotronics, Inc. v. Pneumo Abex Corp., 62 F.3d 1053, 1062 (8th Cir. 1995) (citing Hoselton v. Metz Baking Co., 48 F.3d 1056, 1062 (8th Cir. 1995). In diversity cases, a federal district court has wide discretion in formulating jury instructions. Id. (citation omitted). When reviewing jury instructions, this court's review is limited to whether the instructions, viewed on the whole, fairly and adequately represent the evidence and applicable law in light of the issues presented to the jury in a particular case. Hose v. Chicago N.W. Transp. Co., 70 F.3d 968, 977 (8th Cir. 1995).

In this case, we apply Minnesota substantive law.[1] Thus, the jury instructions, viewed on the whole, should

---

[1]In both parties' briefs there was some question as to whether North Dakota or Minnesota law should be applied. Minnesota clearly has stronger contacts as applied under North Dakota's "significant contacts" approach in tort actions. Issendorf v. Olson, 194 N.W.2d 750, 756 (N.D. 1972).

conform to Minnesota state law.  _Aerotronics_, 62 F.3d at 1062.  We first consider whether the court erred in giving jury instructions 16, 10, and 9.  Later we assess jury instruction 11 for the same purpose.

Jury instruction 16,[2] "Improved Medical Techniques," instructs the jury that it should consider the state of medical technology at the time of the surgery, 1993, not at the time of the trial, 1996. Klisch argues that this confuses the jury because medical technology was not an actual issue at trial. We disagree. Jury instruction 16 was appropriate because medical technology was an actual issue at trial. For example, doctors at MeritCare had to choose what type of technology to use in treating Klisch. The jurors were aware of this fact during trial; and in considering the medical technology actually used, it is important that the jurors considered the available technology at the time of Klisch's surgery, not what would have been available to the doctors at the time of trial. Jury instruction 16 reminds jurors, who bring their own life experiences to a trial, that when analyzing the type of care Klisch received, they must look at the state of technology available to Klisch in 1993, not at the time of trial, 1996, when medical technology may very well have changed.

---

[2]Jury instruction 16, "Improved Medical Techniques," provides:

> You have heard experts testify as to their opinions of the appropriate medical procedures to be followed. The field of medicine is not static, but progressive, with improved techniques and new methods of diagnosis and treatment discovered every day. In determining whether the treatment by the defendant in this case constitutes malpractice, you are instructed that the defendant is to be judged as of the state of advancement of medical knowledge at the time the defendant acted. The fact that a particular course of action would be indicated as appropriate today does not necessarily mean it was so at the time the defendant acted.

(Appellant's App. at 136.)

6

Neither party was able to cite a Minnesota case on point, nor were we able to find one. Nevertheless, after reviewing other case law on this issue and keeping in mind the broad discretion a district court judge has in charging a jury, we believe that the judge's instruction was not an abuse of discretion. See, e.g., Ward v. United States,

838 F.2d 182, 187 (6th Cir. 1988) ("regard must be given to the state of medical science at the time" of treatment) (citation omitted) (applying Tennessee law); Nowatske v. Osterloh, 543 N.W.2d 265, 271 (Wis. 1996) (finding that due regard for the state of medical technology at the time of treatment should be the standard by which a physician's actions are judged).

Jury instruction 10,[3] "Hindsight Prohibited as to Consideration of Negligence," instructs the jury to weigh the information available to the physicians at the time of treatment and without the benefit of hindsight. In particular, Klisch argues that the last part of the jury charge is clearly erroneous: "Foresight, not hindsight, is the standard of negligence." (Appellant's App. at 129.)

Despite Klisch's argument, jury instruction 10 is directly supported by decisions of the Minnesota Supreme Court. Schmidt v. Beninga, 173 N.W.2d 401, 409 (Minn. 1970); Jacobs v. Draper, 142 N.W.2d 628, 632-33 (Minn. 1966); Dellwo v. Pearson, 107 N.W.2d 859, 862 (Minn. 1961). It appears that the confusion lies in distinguishing between negligence, where one uses

---

[3]Jury instruction 10, "Hindsight Prohibited as to Consideration of Negligence," provides:

Negligence is always a question of what a reasonably prudent person, exercising reasonable care, would or should have done under the same circumstances, in light of the information available at that time. Foresight, not hindsight, is the standard of negligence.

(Appellant's App. at 129.)

foresight, and proximate cause, where one uses hindsight in determining whether there was a breach of the standard of care.  See Schmidt, 173 N.W.2d at 409 ("'[N]egligence is tested by foresight but proximate cause is determined by hindsight.") (citation omitted).  Thus, appellant seems to have simply

confused the two standards, and the district court judge clearly did not abuse his discretion in offering this jury instruction.

Jury instruction 9,[4] "Highest Degree of Skill and Care Not Required," instructs the jury that a physician should not be held to a standard of infallibility, but rather should be compared to those with the skill and knowledge ordinarily possessed by those within the same speciality who are similarly situated.[5] Klisch is correct that there is no Minnesota case directly on point as to the instruction offered to the jury. Neither party, however, is able to provide a cite that is particularly helpful in resolving this issue. Nevertheless, we believe, viewing the jury instructions on the whole, that the district court judge did not abuse his discretion in offering this instruction.

---

[4]Jury instruction 9, "Highest Degree of Skill and Care Not Required," provides:

The law does not require of a physician absolute accuracy, either in his practice or in his judgment. It does not hold him to the standard of infallibility nor does it require of him the utmost degree of skill and learning known only to a few in his specialty but only to that degree of knowledge and skill ordinarily possessed by members of the specialty similarly situated and in like situations.

(Appellant's App. at 128.)

[5]Similarly situated, for example, could mean those working in a rural area, as opposed to those working in an urban area, and having the same technology available to them.

Jury instruction 9 could be construed to clarify an earlier instruction, jury instruction 8,[6] in terms of how one should define the standard of care as applied to

---

[6]Jury instruction 8, "Physician's Standard of Care," provides:

In performing professional services, a physician has a duty to exercise such reasonable care, diligence and skill as are ordinarily possessed and exercised by, and expected of, physicians in the same general line of practice.

(Appellant's App. at 127.)

11

similarly-situated doctors. Jury instruction 9, recognizing physician fallibility, read in conjunction with jury instruction 8, requiring similarly-situated physicians to provide reasonable care, skill and diligence, appears to clarify for the jury that a doctor need not be perfect when providing treatment. This, in our judgment, is akin to telling the jury that a physician is not necessarily negligent because his/her treatment is unsuccessful. See Ouellette v. Subak, 391 N.W.2d 810, 816 (Minn. 1986) (a doctor is not negligent simply because the treatment was unsuccessful if the treatment was medically accepted according to available information at the time the choice had to be made).

We agree with Klisch that the district court could certainly have been more clear in this jury instruction. However, considering the court's broad discretion in formulating jury instructions, and after viewing the jury instructions in their entirety, we are unable to find an abuse of discretion.

12

Jury instruction 11,[7] "Alternative Methods of Diagnosis or Treatment," is the most problematic. Klisch properly argues that the term "best judgment," offered as part of jury instruction 11, has been discredited by the Minnesota Supreme Court in the <u>Ouellette</u> decision. <u>Ouellette</u>, 391 N.W.2d at 816. In <u>Ouellette</u>, the Minnesota Supreme Court set forth new jury instructions for a Minnesota trial court to use in medical malpractice cases:

> A doctor is not negligent simply because his or her efforts prove unsuccessful. The fact a doctor may have chosen a method of treatment that later proves to be unsuccessful is not negligence if the treatment chosen was an accepted treatment on the basis of the information available to the doctor at the time a choice had to be made; a doctor must, however, use reasonable care to obtain the information needed to exercise his or her professional judgment, and an unsuccessful method of treatment chosen because of a failure to use such reasonable care would be negligence.

<u>Ouellette</u>, 391 N.W.2d at 816.

---

[7]Jury instruction eleven -- "Alternative Methods of Diagnosis or Treatment,"-- provides:

> Where there is more than one recognized method of diagnosis or treatment, and not one of them is used exclusively and uniformly by all practitioners of good standing, a physician is not negligent if, in exercising his best judgment, he selects one of the approved methods, which later turns out to be a wrong selection, or one not favored by certain other practitioners.

(Appellant's App. at 130.)

Although the district court judge relied on earlier Minnesota case law in charging the jury,[8] the honest error in judgment (or the equivalent "best judgment") language he

---

[8]Kinning v. Nelson, 281 N.W.2d 849 (Minn. 1979).

provided the jurors was improper under Ouellette.  When instructing a jury, as it relates to a physician's choice of alternative methods of treatment, language such as using his/her "professional judgment" rather than "best judgment" is appropriate in determining whether a doctor was negligent.  Ouellette, 391 N.W.2d at 816.[9]

The distinction between best judgment and professional judgment is worth noting because the former suggests a subjective standard and the latter suggests an objective standard of analysis.  To assess medical malpractice consistently with Minnesota law, and as incorporated in the model Minnesota jury instructions, one must use an objective standard of review.  Id.

Although Klisch correctly points out a flaw in jury instruction 11, we do not view it in isolation and believe that the flaw was cured when considering all twenty-nine jury instructions.  When reading the entire jury charge, negligence was sufficiently defined to suggest that objective, not subjective, standards must be applied.  For example, in defining medical malpractice, jury instruction 6 reads in relevant part that "[m]edical negligence (malpractice), by definition, is the failure to treat a patient in accordance with proper accepted medical practice, resulting in harm to the patient." (Appellant's App. at 125.)  Similarly, jury instruction 8 provides that "a physician has a duty to exercise reasonable care . . . ordinarily possessed . . . by . . . physicians in the same

_____

[9]In this regard, the jury instruction offered by the court in Ouellette has been incorporated in the model Minnesota jury instructions.  4 Minn. Dist. Judges Ass'n, Minnesota Practice, JIG, 425 (3d ed. 1986).

15

general line of practice." (<u>Id.</u> at 127.) Thus, as we stated in <u>Davis v. Merrill Lynch</u>, 906 F.2d 1206, 1212 (8th Cir. 1990), a "single erroneous instruction [does not] necessarily require reversal if the error was cured by a subsequent instruction or by consideration of the entire charge." (citation omitted).

Klisch additionally argues that the phrase "alternative methods of treatment," also part of jury instruction 11, was misleading since it was never specifically introduced at trial. Contrary to her assertion, there were competing views offered by expert witnesses in terms of how one should treat Klisch and which alternative methods of treatment were appropriate. Therefore, this part of the instruction was properly presented to the jury.

On the whole, we found the jury instructions balanced.[10] The jury could have decided for either side,

_____

[10]It is worth noting, however, that had the district court judge simply instructed the jury as to model Minnesota jury instruction 425, perhaps many of the problems and confusion stemming from the jury instructions could have been avoided. Model instruction 425 provides:

> In performing professional services for a patient, a doctor . . . must use that degree of skill and learning which is normally possessed and used by doctors . . . in good standing in a similar practice, in similar communities and under like circumstances. In the application of this skill and learning the doctor . . . must also use reasonable care.

> A doctor is not negligent simply because [his or her] efforts prove unsuccessful. The fact a doctor may have chosen a method of treatment that later proves to be unsuccessful is not negligence if the treatment chosen was an accepted treatment on the basis of the information available to the doctor at the time a choice had to be made; a doctor must, however, use reasonable care to obtain the information needed to exercise [his or her] professional judgment, and an unsuccessful method of treatment chosen because of a failure to use such reasonable care would be negligence.

4 Minn. Dist. Judges Ass'n, Minnesota Practice, JIG, 425 (3d ed. 1986).

but in weighing the evidence, found for MeritCare.  We will not upset the jury's decision unless there was an abuse of discretion by the district court judge in the jury charge.  There was not.  We recognize that Mrs. Klisch has been

through much pain and suffering; but for the reasons discussed above, we believe the jury's decision should stand.

## III.

Accordingly, we affirm.

JOHN R. GIBSON, Circuit Judge, dissenting.

I respectfully dissent. The court today recognizes the flaw in instruction number 11, but concludes that when the instructions are read together, there was no error. I respectfully differ. I conclude that instruction number 11 was contrary to existing Minnesota law, the standard the district court was required to follow, was in conflict with other instructions, and that it sufficiently affected the trial of this case that reversal is required.

There were but six instructions that dealt with the issue of negligence. Three do not mention the standard of care. One defines medical negligence, one sets forth the elements of medical negligence, and one that a bad result is not negligence. (Instructions 6, 7 and 12).

Only three instructions dealt with the standard of care, and they are set forth in full in the court's opinion. Instruction 8 properly defines the standard of care required of physicians as that ordinarily possessed and exercised by, and expected of, physicians in the same general line of practice. Instruction 9 reiterates this standard, with argumentative statements concerning absolute accuracy and infallibility. These two

19

instructions define an objective standard.  Instruction 11 tells the jury that where there is more than one recognized method of diagnosis or treatment "a physician is not negligent if, in exercising his best judgment," he selects one of the above methods.  The best judgment language inserts a subjective standard.

The first error in giving Instruction 11 is that the Minnesota Supreme Court in <u>Ouellette v. Subak</u>, 391 N.W.2d 810, 816 (S. Ct. Minn. 1986), held that an instruction containing the phrase "honest error in judgment," language quite similar to that before us, was inappropriate, and suggested an instruction referring to reasonable care and professional judgment. We have in <u>Pearce v. Cornerstone Clinic</u>, 938 F.2d 855 (8th Cir. 1991), reversed where the instruction language "using the best judgment" inserted subjective considerations into the objective standard created by Arkansas statutes.

The second infirmity of the instructions as a whole is that there is direct conflict between the two instructions defining the degree of care as that ordinarily possessed and exercised by physicians in the same line of practice, and instruction 11 that the exercise of best judgment is not negligence. It is well established that when instructions submit conflicting theories and a general verdict is returned, it may not stand. See <u>Francis v. Franklin</u>, 471 U.S. 307, 320-25(1985).

The situation before us is even more pernicious as the jury, after being given the proper standard in instructions 8 and 9, is, in instruction 11, given a preemptive direction that the physician is not negligent when he selects a recognized method of treatment "exercising his best judgment." The instruction the Minnesota court held should be no longer given thus trumps the correct instructions.

I believe this to be prejudicial error. Having so concluded, I will not further comment on the fact that

many of the instructions are riddled with argumentative statements, some having no part in this case.

I would reverse the judgment and remand for retrial based on error in the instructions.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.