The Hetteen prototype was built by the late Edgar Hetteen, who also founded Arctic Cat. (Trial Tr. Vol. X at 2237:17-2238:11; 2240:23-2241:3.) Three witnesses testified about the prototype. Roger Skime, a close friend and colleague of Mr. Hetteen, testified that he was shown and drove the prototype on Mr. Hetteen's farm and alongside public roads during a visit to Mr. Hetteen's farm in the 1980-82 timeframe. (Id. at 2240:23-2242:13, 2284:7-2286:17.)[9] David Karpik testified that he too visited the Hetteen farm in the late 1990s, where he was shown the prototype. (Trial Tr. Vol. XI at 2506:16-2507:25, 2508:9-13, 2552:7-2553:16, Jan. 2, 2018, Docket No. 1088.) David Guenther, the current owner of the prototype, testified similarly: that he visited the Hetteen farm sometime in 2000, where he was shown the prototype. (Trial Tr. Vol. X at 2300-2314.) Guenther bought the prototype from Mr. Hetteen in 2000. (Id. at 2301:4-2302:11.)[10]
In addition to these witnesses' testimony, Arctic Cat presented the physical Hetteen prototype itself at trial. (Trial Tr. Vol. XI at 2501:20-23; see also Parties' Joint Ex. List, Dec. 5, 2017, Docket No. 1062 (admitting the Hetteen prototype into evidence as JTX-002).) The jury personally viewed the prototype and even asked a question during trial about certain stickers on the prototype's windshield and when those stickers were placed on it. (Juror Question to Witness, Dec. 1, 2017, Docket No. 1055.) Guenther testified that he put them on after he purchased the prototype. (Trial Tr. Vol. X at 2304:11-23.)
BRP argues that the Hetteen prototype does not qualify as prior art as a matter of law because Arctic Cat relies solely on uncorroborated witness testimony. BRP is correct that a single interested witness's uncorroborated testimony is legally insufficient *914 to establish an invalidating prior public use. Transweb, LLC v. 3M Innovative Props. Co. , 812 F.3d 1295, 1301 (Fed. Cir. 2016) ; Finnigan Corp. v. ITC , 180 F.3d 1354, 1366 (Fed. Cir. 1999). But Arctic Cat did not rely on only uncorroborated testimony about the Hetteen prototype: Arctic Cat presented the physical prototype itself to the jury, and Mr. Guenther testified that the prototype has remained substantially unchanged. (Trial Tr. Vol. X at 2303:6-2304:10.) The physical prototype, together with the testimony of Skime, Karpik, and Guenther, constitutes sufficient evidence from which a reasonable jury could have found that the Hetteen prototype is prior art. Finnigan , 180 F.3d at 1366 ("Mere testimony concerning invalidating activities is received with ... skepticism because such activities are normally documented by tangible evidence such as devices ...." (emphasis added) ).
Second, there was sufficient evidence from which the jury could have found that the Hetteen prototype includes each and every claim limitation of claim 88 of the '669 Patent. BRP argues that no reasonable jury could have found that the Hetteen prototype engine was disposed in front of the seat. But an image of the prototype clearly shows that a reasonable jury could have found that the engine of the Hetteen prototype is disposed in front of the seat. (See Decl. of Niall A. MacLeod ¶ 7, Ex. F at 4 (Trial Ex. D# 1569), Jan. 3, 2018, Docket No. 1097.) Moreover, Arctic Cat's technical expert, Mr. Warner, opined that the prototype's engine is disposed in front of the seat, explaining the difference between the prototype's engine and transmission. (Trial Tr. Vol. XI at 2593:25-2604:15.) Therefore, the jury had sufficient evidence from which to find that claim 88 of the '669 Patent is anticipated by the Hetteen prototype.[11]
4. Obviousness
While the jury did not find that claims 88 and 92-95 of the '669 Patent were invalid for obviousness, Arctic Cat maintains that claims 88 and 92-95 of the '669 Patent are invalid for obviousness as a matter of law, in light of the jury's finding that claim 88 of the '669 Patent is invalid for anticipation. Specifically, Arctic Cat argues that the Court should amend the judgment pursuant to Rule 59(e) to include an obviousness finding because "anticipation is the epitome of obviousness." Connell v. Sears, Roebuck & Co. , 722 F.2d 1542, 1548 (Fed. Cir. 1983). Alternatively, Arctic Cat seeks a new trial on obviousness.
A patent claim is invalid "if the differences between the claimed invention and the prior art are such that the claimed invention as a whole would have been obvious" to a PHOSITA. 35 U.S.C. § 103 ; see KSR Int'l Co. v. Teleflex Inc. , 550 U.S. 398, 406, 127 S.Ct. 1727, 167 L.Ed.2d 705 (2007) ; Graham v. John Deere Co. of Kansas City , 383 U.S. 1, 3, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966).
" Rule 59(e) motions serve the limited function of correcting 'manifest errors of law or fact or to present newly discovered evidence.' " Innovative Home Health Care v. P.T.-O.T. Assoc. of the Black Hills , 141 F.3d 1284, 1286 (8th Cir. 1998). The Court "has broad discretion to alter or amend a judgment under Rule 59(e)." SFH, Inc. v. Millard Refrigerated Servs., Inc. , 339 F.3d 738, 746 (8th Cir. 2003).
The problem for Arctic Cat is that it argued that only claim 88 of the '669 Patent is anticipated. ( *915 See Jury Inst. Nos. 25-26.) As such, the jury was instructed - without objection from Arctic Cat - that only claim 88 of the '669 Patent was subject to the Court's anticipation instruction. Thus, because the jury did not find claims 92-95 of the '669 Patent anticipated, Arctic Cat's argument is unavailing.[12]
Moreover, Arctic Cat is not entitled to a new trial on obviousness. There was substantial testimony from both BRP and Arctic Cat about modifications to the prior-art snowmobiles that would enable them to meet the limitations of claims 92-95 of the '669 Patent, the effect that such modifications would have on the prior-art snowmobiles, and whether a PHOSITA would be motivated to make such modifications. (E.g. , Trial Tr. Vol. XII at 2790:14-2792:1, 2796:11-2798:7 (modifications); Trial Tr. Vol. XIV at 3204:7-3205:10, 3184:3-3185:23 (modifications); Trial Tr. Vol. XIII at 3127:17-3129:6 (modifications); Trial Tr. Vol. XII at 2811:2-2812:7 (motivation); Trial Tr. Vol. XIII at 3118:11-3119:3, 3121:13-3122:2, 3129:8-15 (motivation); Trial Tr. Vol. XIV at 3185:24-3187:3 (motivation); see also Juror Question to Witness, Dec. 1, 2017, Docket No. 1056 (asking about the effect of adjusting the steering position on a prior-art snowmobile).) Thus, the jury's finding that claims 92-95 of the '669 Patent are not invalid for obviousness was not against the great weight of the evidence.
C. The '847 Patent
At trial, Arctic Cat argued that claims 1 and 6 of the '847 Patent are invalid for anticipation, and that claims 1 and 6-8 are invalid for obviousness.[13] (See Jury Inst. Nos. 25-28.) At the close of Arctic Cat's case in chief, BRP moved for JMOL under Rule 50(a) that claims 1 and 6-8 are not invalid. (Pls.' Mot. for JMOL, Dec. 4, 2017, Docket No. 1058.) The Court denied BRP's motion. (Minute Entry, Dec. 5, 2017, Docket No. 1065.) The jury found claims 1 and 6-8 of the '847 Patent invalid. (Verdict at 2.) Now, BRP renews its motion for JMOL under Rule 50(b) that claims 1 and 6-8 of the '847 Patent are not invalid. Because Arctic Cat presented sufficient evidence from which the jury could have found by clear and convincing evidence that claims 1 and 6-8 of the '847 Patent are invalid, the Court will deny BRP's motion.
1. Anticipation
The jury found that claims 1 and 6 of the '847 Patent are invalid for anticipation. There was sufficient evidence from which the jury could have found by clear and convincing evidence that claims 1 and 6 of the '847 Patent are anticipated by the T/S Mod snowmobile.
First, there was sufficient evidence from which the jury could have found that the T/S Mod includes a "pyramidal brace assembly." The Court already determined at summary judgment that the T/S Mod included a "pyramidal" assembly; the issue for trial was whether the T/S Mod met the "brace" limitation. (Mem. Op. & Order *916 ("Summ. J. Order") at 21 & n.6, 26-28, Dec. 29, 2016, Docket No. 781; Mem. Op. & Order at 6, Nov. 11, 2017, Docket No. 990.) Arctic Cat presented the physical T/S Mod to the jury. (See Parties' Joint Ex. List.) Also, Arctic Cat's technical expert, David Karpik, testified that the T/S Mod pyramidal assembly is "a brace," and explained that "anybody with common sense that would see that, if you put a tube between two points, that you are bracing something." (Trial Tr. Vol. XI at 2466:11-2467:10.) And the T/S Mod's creator, Steve Thorsen, testified that he called the legs of the pyramidal assembly "braces," he agreed that they left the frame "more rigid" and "brace everything," and he agreed that he could feel that they reduced "twist" when he grabbed the back of the T/S Mod. (Id. at 2400:7-2402:3, 2408:7-2410:2, 2411:7-11.)[14]
Second, there was sufficient evidence from which the jury could have found that the T/S Mod includes an "apex."[15] The Court construed "apex" to mean "the uppermost part of the pyramidal brace assembly." (Claim Const. Order at 15.) Suffice it to say that, given that the jury had a sufficient basis to find that the T/S Mod included a pyramidal brace assembly, it also had a sufficient basis to find that such assembly included an "uppermost part." BRP's argument that the T/S Mod lacks an "apex" because one of the four tubes of the T/S Mod's assembly is welded to the side of another tube rather than at the steering bracket was an argument for the jury.
Third, there was sufficient evidence from which the jury could have found that the "upper column" limitation was met.[16] For example, there was evidence, drawn from the prosecution history of the '847 Patent, that the "upper column" limitation was admitted prior art, (Trial Tr. Vol. I at 195:3-196:24, Jan. 2, 2018, Docket No. 1078; Trial Tr. Vol. XI at 2425:16-21, 2468:11-2470:16); that a prior-art snowmobile contained an upper column, (Defs.' App. ¶ 29, Ex. 29 (Trial Ex. D# 964); Trial Tr. Vol. XI at 2470:1-2473:4); and that upper columns were common snowmobile components before the subject matter of the '847 Patent was invented (Trial Tr. Vol. XI at 2502:14-2505:10).
Fourth, there was sufficient evidence from which the jury could have found that the T/S Mod is in fact a "snowmobile" with "skis."[17] Photographs of the T/S Mod *917 clearly show that the jury was free to so find. (Defs.' App. ¶ 6, Ex. 6 (Trial Ex. D# 269).) BRP's arguments that the T/S Mod was an 'oval ice racer,' and not a 'snowmobile,' were for the jury.[18]
2. Obviousness
The jury found by clear and convincing evidence that claims 1 and 6-8 of the '847 Patent are invalid for obviousness. BRP seeks a new trial on obviousness because of alleged errors in both the jury instructions and the special-verdict form.
a. Jury Instructions
Jury instructions "viewed on the whole," should "fairly and adequately represent the evidence and applicable law in light of the issues presented to the jury in a particular case." Klisch v. Meritcare Med. Grp., Inc. , 134 F.3d 1356, 1358 (8th Cir. 1998). How the Court crafts jury instructions is within the Court's sound discretion. Reed v. Malone's Mech., Inc. , 765 F.3d 900, 907 (8th Cir. 2014). Challenges to jury instructions must be reviewed in the context of the overall instructions, not just a single word or sentence. See Therasense, Inc. v. Becton, Dickinson & Co. , 593 F.3d 1325, 1331 (Fed. Cir. 2010). In crafting jury instructions, "[t]he district judge need not use any particular form of words or sequence of ideas so long as the charge as a whole conveys to the jury a clear and correct understanding of the applicable substantive law without confusing or misleading them." 9C Arthur R. Miller, Fed. Prac. & Proc. Civ. § 2556 (3d ed. 2017) (footnote omitted). "It is axiomatic that the trial court should charge the jury in plain language. It should not use technical or obscure legal phrases if the legal rule can be stated in less formal words." Id. An error in jury instructions justifies a new trial "only if the error 'misled the jury or had a probable effect on its verdict.' " Hallmark Cards, Inc. v. Murley , 703 F.3d 456, 460 (8th Cir. 2013) (quoting E.I. du Pont de Nemours & Co. v. Berkley & Co. , 620 F.2d 1247, 1257 (8th Cir. 1980) ).
Here, the Court instructed the jury that it "should" consider objective indicia of nonobviousness in making its obviousness determinations. (Jury Inst. Nos. 27-28.)[19] BRP contends that the jury *918 should have been instructed that it "must" consider objective indicia of non-obviousness because such considerations are mandatory.
Much ink has been spilt over whether " 'should' always has a permissive rather than mandatory, meaning." Bord v. Rubin , No. 97-6401, 1998 WL 420777, at *4 (S.D.N.Y. July 27, 1998). Quite simply, context matters. Id. ; see Montgomery , 462 F.3d at 1070 ("[U]se of the word 'should' is not unambiguous and must be read in context."). BRP's argument - that "should" is permissive - has more traction in the context of statutes and contracts: words written by lawyers, argued over by lawyers, and interpreted by lawyers. See McDonnell Douglas Corp. v. Islamic Republic of Iran , 758 F.2d 341, 347 (8th Cir. 1985). But see United States v. Montgomery , 462 F.3d 1067, 1069-70 (9th Cir. 2006) (holding that the word "should" in a prior Ninth Circuit opinion described a mandatory act, not a permissive one). Here, however, in the context of jury instructions, "should" sufficiently conveyed to the members of the jury (none of whom were lawyers) the purportedly mandatory nature of their consideration of objective indicia of nonobviousness. Indeed, the Eighth Circuit has held that it is not an abuse of discretion to instruct a jury that it "should" consider something, when the underlying substantive law suggests that that something "must" be considered. Klisch , 134 F.3d at 1358-59.[20]
BRP does not cite to any authority holding that it is legal error (and not harmless) to instruct a jury that it "should" consider something, rather than that it "must." Rather, all of the Federal Circuit authority that BRP cites concerns a court's finding of obviousness or non-obviousness, not a jury's.[21]
Even if it was error for the Court to use "should" rather than "must," such error was harmless - it neither misled the jury nor had a probable effect on the verdict. See Hallmark Cards, Inc. , 703 F.3d at 460. First, the word "should" did not mislead the jury, given its use in context. Second, using "should" instead of "must" did not have a probable effect on the outcome. At best for BRP, "the term 'should' ... connote[d] a strong suggestion,"
*919 Montgomery , 462 F.3d at 1069, meaning that it was highly probable that the jury considered objective indicia of non-obviousness.[22]
b. Special-Verdict Form
The use, form, and contents of a special-verdict form are within the trial court's discretion. See SEC v. Capital Sols. Monthly Income Fund, LP , 818 F.3d 346, 354 (8th Cir. 2016). As long as the special-verdict form "accurately, adequately, and clearly state[s] the relevant issues" to be decided, courts will be deemed to have properly exercised their discretion. Chlopek v. Fed. Ins. Co. , 499 F.3d 692, 701 (7th Cir. 2007).
BRP proposed using a special-verdict form that would have asked the jury (1) whether each individual claim was invalid, (2) if so, the ground(s) for each claim found invalid, and (3) the particular prior art used for each ground of invalidity. (Pls.' Proposed Special Verdict Form at 2-4, Oct. 16, 2017, Docket No. 884.) The Court, however, favoring simplicity, used a form that asked simply whether all the asserted claims of each patent were invalid, and on what grounds. (See Verdict at 2-3.)
BRP argues that it is entitled to a new trial because the special-verdict form asked whether the jury found "all" the asserted claims invalid, rather than on a claim-by-claim basis. BRP argues that the form was prejudicial because the jury would give "less scrutiny and/or weight" to the dependent claims than to the independent claims. (Pls.' Mem. at 17, Jan. 3, 2018, Docket No. 1101.) First, BRP cites no authority supporting its argument that a simpler form like the one the Court used caused BRP sufficient prejudice to justify a new trial, or frankly any prejudice at all. Second, to the extent that any such prejudice occurred as a result of the structure of the special-verdict form, the Court's instructions eliminated (or at least substantially mitigated) any such prejudice. (See Jury Inst. No. 23 ("Each claim is effectively treated as if it were a separate patent."); Jury Inst. No. 27 ("In determining whether the claimed invention was obvious, you must consider each claim separately." (emphasis added) ); see also Jury Inst. No. 15 (describing the difference between independent and dependent claims).) BRP is not entitled to a new trial on obviousness.
IV. DAMAGES AND WILLFULNESS
The jury did not make any findings related to damages or willfulness, consistent with the instructions on the special-verdict form. (See Verdict at 3.) Because the Court's rulings on the parties' motions does not result in a finding of liability by Arctic Cat for infringement of a valid patent claim, a new trial on damages and willfulness is not warranted. If after any further proceedings, however, there is a finding of liability by Arctic Cat for infringement of a valid patent claim, then BRP would be entitled to a new trial on damages and willfulness.
ORDER
Based on the foregoing, and all the files, records, and proceedings herein, IT IS HEREBY ORDERED that:
*920 1. Defendants' Renewed Motion for Judgment as a Matter of Law; Motion to Alter/Amend the Judgment for Obviousness; and Conditional Rule 59 Motion for New Trial [Docket No. 1094] is DENIED .
2. Plaintiffs' Motion for a New Trial [Docket No. 1099] is DENIED .
3. Plaintiffs' Renewed Motion for Judgment as a Matter of Law under Rule 50(b) [Docket No. 1102] is DENIED .

The priority date for the '669 Patent is November 26, 1999. (Jury Inst. No. 26.)

Guenther's conduct in 2000 is after the priority date of the '669 Patent. Irrespective of whether Guenther's conduct can invalidate the '669 Patent - which neither party has addressed - Guenther's testimony was probative of whether the Hetteen prototype invalidates the '669 Patent and served to corroborate the testimony of Skime and Karpik. See Transweb, LLC v. 3M Innovative Props. Co. , 812 F.3d 1295, 1301 (Fed. Cir. 2016) ("The corroborating evidence can include ... testimonial evidence.").

Because the Court concludes that sufficient evidence supports a jury finding that the Hetteen prototype anticipates claim 88 of the '669 Patent, the Court need not decide whether there was sufficient evidence that any other prior-art snowmobile anticipates claim 88.

To the extent that Arctic Cat seeks to amend the judgment to include a finding that claim 88 of the '669 Patent is obvious in light of the jury's finding that claim 88 is anticipated, it is unclear what purpose such an amended judgment would serve.

Arctic Cat also argued that claims 1 and 6-8 of the '847 Patent are indefinite, but the jury did not find them indefinite. Arctic Cat conditionally moves for a new trial on indefiniteness in the event that the jury's invalidity finding with respect to the '847 Patent is later reversed or vacated, by this Court or on appeal. Arctic Cat's argument here is that the term "pyramidal" is indefinite. A new trial is not warranted. There was sufficient evidence from which the jury could have found that Arctic Cat failed to prove by clear and convincing evidence that the term "pyramidal" is indefinite. The Court will therefore deny Arctic Cat's motion on this ground.

Although the Court held that Arctic Cat was not entitled to summary judgment that the T/S Mod pyramidal assembly "braced" the frame viewing Thorsen's testimony in the light most favorable to BRP (Summ. J. Order at 26-28), at trial the jury was free to credit Thorsen's testimony, Karpik's expert testimony, and the jury's personal inspection of the T/S Mod.

The "apex" limitation appears in claim 6 of the '847 Patent, but not in claim 1.

The "upper column" limitation appears in claims 7 and 8 of the '847 Patent, but not in claims 1 or 6. Arctic Cat did not argue that claim 7 or 8 is anticipated. (See Jury Inst. No. 25-26.) Nevertheless, the Court will address BRP's argument, as the "upper column" limitation is relevant to the jury's obviousness finding.

In its post-trial briefing, BRP implies that the Court shirked its claim-construction responsibility with respect to the "snowmobile" and "skis" limitations. (Defs.' Mem. at 33 & n.5, Jan. 3, 2018, Docket No. 1104.) BRP's complaint is that the Court declined to construe those terms at summary judgment - almost two years after claim construction. (Id. ) At claim construction, the parties requested that the Court construe nearly 20 terms in the '847 Patent and 11 terms in the '669 Patent. (Joint Claim Const. Statement, Ex. B, Sept. 22, 2014, Docket No. 360.) Although "skis" made the parties' initial list, "snowmobile" did not. (Id. ) The Court ordered the parties to limit their briefing and argument to "ten representative claim terms, phrases or clauses." (Order, Sept. 25, 2014, Docket No. 362; see, e.g. , N.D. Ill. LPR 4.1(b) (limiting by local patent rule the number of claim terms the court will construe to ten).) Neither "snowmobile" nor "skis" was on the parties' revised list of ten terms requiring construction. (Joint Claim Const. Statement, Nov. 11, 2014, Docket No. 432.) BRP could have insisted to Arctic Cat during the meet-and-confer process that it would seek construction of "snowmobile" and "skis" and could have made necessary concessions to effectuate that result. But BRP did not. The Court recognizes that it may be difficult to predict how failing to seek construction of a certain claim term will affect the ultimate outcome of a patent-infringement action. See, e.g., Arctic Cat, Inc. v. Bombardier Recreational Prods. Inc. , No. 12-2692, 2018 WL 654218, at *4 (D. Minn. Jan. 2, 2018) (granting the accused infringer summary judgment of noninfringement after the parties failed to seek construction of a key claim term).

Because the Court finds that sufficient evidence supports a jury finding that the T/S Mod anticipates claims 1 and 6 of the '847 patent, the Court need not decide whether there was sufficient evidence that any other prior-art snowmobile anticipates claims 1 and 6.

The Court's use of "should" in its instruction on objective indicia of non-obviousness was consistent with both the 2016 version of the Federal Circuit Bar Association's Model Patent Jury Instructions, see Fed. Cir. Bar Ass'n, Model Patent Jury Instructions 50 (2016) ("In making these assessments, you should take into account any objective evidence (sometimes called 'secondary considerations') that may shed light on the obviousness or not of the claimed invention, ..." (emphasis added) ), and the January 2018 version of the Northern District of California's Model Patent Jury Instructions, see U.S. Dist. Ct., N.D. Cal, Model Patent Jury Instructions 37 (2018) ("Finally, you should consider any of the following factors that you find have been shown by the evidence .... Although you should consider any evidence of these factors, the relevance and importance of any of them to your decision on whether the claimed invention would have been obvious is up to you." (emphases added) ).

Had the Court used "may" instead of "should," BRP might be entitled to a new trial. Cf. Risdal v. Halford , 209 F.3d 1071, 1071-72 (8th Cir. 2000) (holding in a § 1983 case that it was legal error to instruct jury that it "may" award nominal damages if the jury found a constitutional violation, instead of that it "must").

In the cases that BRP cites, the district courts made obviousness/non-obviousness determinations at summary judgment, after a bench trial, or at JMOL. Millennium Pharm., Inc. v. Sandoz Inc. , 862 F.3d 1356 (Fed. Cir. 2017) (bench trial); Apple Inc. v. Samsung Elecs. Co. , 839 F.3d 1034 (Fed. Cir. 2016) (JMOL); In re Cyclobenzaprine Hydrochloride Extended-Release Capsule Patent Litig. , 676 F.3d 1063 (Fed. Cir. 2012) (bench trial); Transocean Offshore Deepwater Drilling, Inc. v. Maersk Drilling USA, Inc. , 699 F.3d 1340 (Fed. Cir. 2012) (JMOL); Ruiz v. A.B. Chance Co. , 234 F.3d 654 (Fed. Cir. 2000) (bench trial); Rockwell Int'l Corp. v. United States , 147 F.3d 1358 (Fed. Cir. 1998) (summary judgment); Richardson-Vicks Inc. v. Upjohn Co. , 122 F.3d 1476 (Fed. Cir. 1997) (JMOL); Cable Elec. Prod., Inc. v. Genmark, Inc. , 770 F.2d 1015 (Fed. Cir. 1985), overruled on other grounds by Midwest Indus., Inc. v. Karavan Trailers, Inc. , 175 F.3d 1356, 1358 (Fed. Cir. 1999) (summary judgment); Simmons Fastener Corp. v. Ill. Tool Works, Inc. , 739 F.2d 1573 (Fed. Cir. 1984) (bench trial); Stratoflex, Inc. v. Aeroquip Corp. , 713 F.2d 1530 (Fed. Cir. 1983) (bench trial).

In fact, the jury very likely took objective indicia of non-obviousness into account in making its obviousness determinations. The jury found claim 88 of the '669 Patent anticipated, but did not find claims 92-95 of the '669 Patent obvious - and those claims depend from claim 88. That the jury found independent claim 88 anticipated and dependent claims 92-95 not obvious strongly suggests both that the jury considered objective indicia of non-obviousness. The logical inference, then, is that with respect to the '847 Patent, the jury there too considered objective indicia of non-obviousness, but found claims 1 and 6-8 of the '847 Patent obvious nevertheless.